# MCMILLAN ET AL. v. PENNSYLVANIA

No. 85–215.   Argued March 4, 1986—Decided June 19, 1986

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, POWELL, and O'CONNOR, JJ., joined. MARSHALL, J., filed a dissenting opinion, in which BRENNAN and BLACKMUN, JJ., joined, *post*, p. 93. STEVENS, J., filed a dissenting opinion, *post*, p. 95.

*Leonard N. Sosnov* argued the cause for petitioners. With him on the briefs were *John W. Packel, David Rudovsky*, and *Gerald A. Stein*.

*Steven J. Cooperstein* argued the cause for respondent. With him on the brief were *Gaele McLaughlin Barthold, Harriet R. Brumberg, Eric B. Henson*, and *William G. Chadwick, Jr.*

JUSTICE REHNQUIST delivered the opinion of the Court.

We granted certiorari to consider the constitutionality, under the Due Process Clause of the Fourteenth Amendment and the jury trial guarantee of the Sixth Amendment, of Pennsylvania's Mandatory Minimum Sentencing Act, 42 Pa. Cons. Stat. § 9712 (1982) (the Act).

# I

The Act was adopted in 1982. It provides that anyone convicted of certain enumerated felonies is subject to a mandatory minimum sentence of five years' imprisonment if the sentencing judge finds, by a preponderance of the evidence, that the person "visibly possessed a firearm" during the commission of the offense. At the sentencing hearing, the judge is directed to consider the evidence introduced at trial and any additional evidence offered by either the defendant or the Commonwealth. § 9712(b).[1] The Act operates to divest

---

[1] Section 9712 provides in full:

"(a) Mandatory sentence.—Any person who is convicted in any court of this Commonwealth of murder of the third degree, voluntary manslaughter, rape, involuntary deviate sexual intercourse, robbery as defined in 18 Pa. C. S. § 3701(a)(1)(i), (ii) or (iii) (relating to robbery), aggravated assault as defined in 18 Pa. C. S. § 2702(a)(1) (relating to aggravated assault) or kidnapping, or who is convicted of attempt to commit any of these crimes, shall, if the person visibly possessed a firearm during the commission of the offense, be sentenced to a minimum sentence of at least five years of total confinement notwithstanding any other provision of this title or other statute to the contrary.

"(b) Proof at sentencing.—Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider any evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.

"(c) Authority of court in sentencing.—There shall be no authority in any court to impose on an offender to which this section is applicable any lesser sentence than provided for in subsection (a) or to place such offender on probation or to suspend sentence. Nothing in this section shall prevent the sentencing court from imposing a sentence greater than that provided in this section. Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing shall not supersede the mandatory sentences provided in this section.

"(d) Appeal by Commonwealth.—If a sentencing court refuses to apply this section where applicable, the Commonwealth shall have the right to

the judge of discretion to impose any sentence of less than five years for the underlying felony; it does not authorize a sentence in excess of that otherwise allowed for that offense.

Each petitioner was convicted of, among other things, one of § 9712's enumerated felonies. Petitioner McMillan, who shot his victim in the right buttock after an argument over a debt, was convicted by a jury of aggravated assault. Petitioner Peterson shot and killed her husband and, following a bench trial, was convicted of voluntary manslaughter. Petitioner Dennison shot and seriously wounded an acquaintance and was convicted of aggravated assault after a bench trial. Petitioner Smalls robbed a seafood store at gunpoint; following a bench trial he was convicted of robbery. In each case the Commonwealth gave notice that at sentencing it would seek to proceed under the Act. No § 9712 hearing was held, however, because each of the sentencing judges before whom petitioners appeared found the Act unconstitutional; each imposed a lesser sentence than that required by the Act.[2]

---

appellate review of the action of the sentencing court. The appellate court shall vacate the sentence and remand the case to the sentencing court for imposition of a sentence in accordance with this section if it finds that the sentence was imposed in violation of this section.

"(e) Definition of firearm.—As used in this section 'firearm' means any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive or the expansion of gas therein."

[2] McMillan was sentenced to a term of 3 to 10 years for aggravated assault; he was also convicted of possession of instruments of crime, 18 Pa. Cons. Stat. § 2503 (1982), for which he received a concurrent term of 2½ to 5 years. Peterson received a sentence of 1 to 6 years on the manslaughter charge, as well as a concurrent term of 6 to 18 months for possession of instruments of crime. Dennison received concurrent sentences of 11½ to 23 months for aggravated assault and possession of instruments of crime. Smalls was sentenced to concurrent 4- to 8-year terms for robbery and criminal conspiracy; he was also convicted of violating the Uniform Firearms Act, § 6101 et seq., and reckless endangerment, § 2705, for which he was sentenced to concurrent terms of 2½ to 5 years and 1 to 2 years respectively. He received a suspended sentence for possession of instruments of crime.

The Commonwealth appealed all four cases to the Supreme Court of Pennsylvania. That court consolidated the appeals and unanimously concluded that the Act is consistent with due process. *Commonwealth* v. *Wright*, 508 Pa. 25, 494 A. 2d 354 (1985). Petitioners' principal argument was that visible possession of a firearm is an element of the crimes for which they were being sentenced and thus must be proved beyond a reasonable doubt under *In re Winship*, 397 U. S. 358 (1970), and *Mullaney* v. *Wilbur*, 421 U. S. 684 (1975). After observing that the legislature had expressly provided that visible possession "shall not be an element of the crime," § 9712(b), and that the reasonable-doubt standard " 'has always been dependent on how a state defines the offense' " in question, 508 Pa., at 34, 494 A. 2d, at 359, quoting *Patterson* v. *New York*, 432 U. S. 197, 211, n. 12 (1977), the court rejected the claim that the Act effectively creates a new set of upgraded felonies of which visible possession is an "element." Section 9712, which comes into play only after the defendant has been convicted of an enumerated felony, neither provides for an increase in the maximum sentence for such felony nor authorizes a separate sentence; it merely requires a minimum sentence of five years, which may be more or less than the minimum sentence that might otherwise have been imposed. And consistent with *Winship*, *Mullaney*, and *Patterson*, the Act "creates no presumption as to any essential fact and places no burden on the defendant"; it "in no way relieve[s] the prosecution of its burden of proving guilt." 508 Pa., at 35, 494 A. 2d, at 359.

Petitioners also contended that even if visible possession is not an element of the offense, due process requires more than proof by a preponderance of the evidence. The Supreme Court of Pennsylvania rejected this claim as well, holding that the preponderance standard satisfies due process under the approach set out in *Addington* v. *Texas*, 441 U. S. 418 (1979). The Commonwealth's interest in deterring the illegal use of firearms and in sure punishment for those who

commit crimes with guns is as compelling as a convicted defendant's contervailing liberty interest, which has been substantially diminished by a guilty verdict. Moreover, the risk of error in the context of a § 9712 proceeding is comparatively slight—visible possession is a simple, straightforward issue susceptible of objective proof. On balance, the court concluded, it is reasonable for the defendant and the Commonwealth to share equally in any risk of error. The court vacated petitioners' sentences and remanded for sentencing pursuant to the Act. One justice concurred and filed a separate opinion.

We granted certiorari, 474 U. S. 815 (1985), and now affirm.

## II

Petitioners argue that under the Due Process Clause as interpreted in *Winship* and *Mullaney*, if a State wants to punish visible possession of a firearm it must undertake the burden of proving that fact beyond a reasonable doubt. We disagree. *Winship* held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U. S., at 364. In *Mullaney* v. *Wilbur*, we held that the Due Process Clause "requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." 421 U. S., at 704. But in *Patterson* we rejected the claim that whenever a State links the "severity of punishment" to "the presence or absence of an identified fact" the State must prove that fact beyond a reasonable doubt. 432 U. S., at 214; see also *id.*, at 207 (State need not "prove beyond a reasonable doubt every fact, the existence or nonexistence of which it is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of the punishment"). In particular, we upheld against a due process challenge New York's law placing on

defendants charged with murder the burden of proving the affirmative defense of extreme emotional disturbance.

*Patterson* stressed that in determining what facts must be proved beyond a reasonable doubt the state legislature's definition of the elements of the offense is usually dispositive: "[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements *included in the definition of the offense* of which the defendant is charged." *Id.*, at 210 (emphasis added). While "there are obviously constitutional limits beyond which the States may not go in this regard," *ibid.*, "[t]he applicability of the reasonable-doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case," *id.*, at 211, n. 12. *Patterson* rests on a premise that bears repeating here:

> "It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government, *Irvine* v. *California,* 347 U. S. 128, 134 (1954) (plurality opinion), and that we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States. Among other things, it is normally 'within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion,' and its decision in this regard is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' *Speiser* v. *Randall,* 357 U. S. 513, 523 (1958)." *Id.*, at 201–202 (citations omitted).

We believe that the present case is controlled by *Patterson,* our most recent pronouncement on this subject, rather than by *Mullaney.* As the Supreme Court of Pennsylvania observed, the Pennsylvania Legislature has expressly provided that visible possession of a firearm is not an element of

the crimes enumerated in the mandatory sentencing statute, § 9712(b), but instead is a sentencing factor that comes into play only after the defendant has been found guilty of one of those crimes beyond a reasonable doubt. Indeed, the elements of the enumerated offenses, like the maximum permissible penalties for those offenses, were established long before the Mandatory Minimum Sentencing Act was passed.[3] While visible possession might well have been included as an element of the enumerated offenses, Pennsylvania chose not to redefine those offenses in order to so include it, and *Patterson* teaches that we should hesitate to conclude that due process bars the State from pursuing its chosen course in the area of defining crimes and prescribing penalties.

As *Patterson* recognized, of course, there are constitutional limits to the State's power in this regard; in certain limited circumstances *Winship*'s reasonable-doubt requirement applies to facts not formally identified as elements of the offense charged. Petitioners argue that Pennsylvania has gone beyond those limits and that its formal provision that visible possession is not an element of the crime is therefore of no effect. We do not think so. While we have never attempted to define precisely the constitutional limits noted in *Patterson*, *i. e.*, the extent to which due process forbids the reallocation or reduction of burdens of proof in criminal cases, and do not do so today, we are persuaded by several factors that Pennsylvania's Mandatory Minimum Sentencing Act does not exceed those limits.

We note first that the Act plainly does not transgress the limits expressly set out in *Patterson*. Responding to the concern that its rule would permit States unbridled power to redefine crimes to the detriment of criminal defendants, the *Patterson* Court advanced the unremarkable proposition that

---

[3] The elements of the enumerated offenses were established in essentially their present form in 1972. See 1972 Pa. Laws No. 334, which compiled, amended, and codified the Pennsylvania "Crimes Code." The Mandatory Minimum Sentencing Act was passed in 1982.

the Due Process Clause precludes States from discarding the presumption of innocence:

> " '[I]t is not within the province of a legislature to declare an individual guilty or presumptively guilty of a crime.' *McFarland* v. *American Sugar Rfg. Co.*, 241 U. S. 79, 86 (1916). The legislature cannot 'validly command that the finding of an indictment, or mere proof of the identity of the accused, should create a presumption of the existence of all the facts essential to guilt.' *Tot* v. *United States*, 319 U. S. 463, 469 (1943)." *Patterson*, 432 U. S., at 210.

Here, of course, the Act creates no presumptions of the sort condemned in *McFarland* v. *American Sugar Rfg. Co.*, 241 U. S. 79 (1916) (presumption from price sugar refiner paid for sugar that refiner was party to a monopoly), or *Tot* v. *United States*, 319 U. S. 463 (1943) (presumption that convicted felon who possessed a weapon obtained it in interstate commerce). Nor does it relieve the prosecution of its burden of proving guilt; § 9712 only becomes applicable after a defendant has been duly convicted of the crime for which he is to be punished.

The Court in *Mullaney* observed, with respect to the main criminal statute invalidated in that case, that once the State proved the elements which Maine required it to prove beyond a reasonable doubt the defendant faced "a differential in sentencing ranging from a nominal fine to a mandatory life sentence." 421 U. S., at 700. In the present case the situation is quite different. Of the offenses enumerated in the Act, third-degree murder, robbery as defined in 18 Pa. Cons. Stat. § 3701(a)(1) (1982), kidnaping, rape, and involuntary deviate sexual intercourse are first-degree felonies subjecting the defendant to a maximum of 20 years' imprisonment. § 1103(1). Voluntary manslaughter and aggravated assault as defined in § 2702(a)(1) are felonies of the second degree carrying a maximum sentence of 10 years. § 1103(2). Section 9712 neither alters the maximum penalty for the crime

committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm. Section 9712 "ups the ante" for the defendant only by raising to five years the minimum sentence which may be imposed within the statutory plan.[4] The statute gives no impression of having been tailored to permit the visible possession finding to be a tail which wags the dog of the substantive offense. Petitioners' claim that visible possession under the Pennsylvania statute is "really" an element of the offenses for which they are being punished—that Pennsylvania has in effect defined a new set of upgraded felonies—would have at least more superficial appeal if a finding of visible possession exposed them to greater or additional punishment, cf. 18 U. S. C. § 2113(d) (providing separate and greater punishment for bank robberies accomplished through "use of a dangerous weapon or device"), but it does not.

Petitioners contend that this Court's decision in *Specht* v. *Patterson*, 386 U. S. 605 (1967), requires the invalidation of the Pennsylvania statute challenged here. Again, we think petitioners simply read too much into one of our previous decisions. Under the Colorado scheme at issue in *Specht*, conviction of a sexual offense otherwise carrying a maximum penalty of 10 years exposed a defendant to an indefinite term to and including life imprisonment if the sentencing judge made a post-trial finding that the defendant posed "a threat of bodily harm to members of the public, or is an habitual offender and mentally ill," *id.*, at 607. This finding could be made, without notice or any "hearing in the normal sense,"

---

[4] By prescribing a mandatory minimum sentence, the Act incidentally serves to restrict the sentencing court's discretion in setting a maximum sentence. Pennsylvania law provides that a minimum sentence of confinement "shall not exceed one-half of the maximum sentence imposed." 42 Pa. Cons. Stat. § 9756(b) (1982). Thus, the shortest maximum term permissible under the Act is 10 years.

based solely on a presentence psychiatric report. *Id.*, at 608. This Court held that the Colorado scheme failed to satisfy the requirements of due process, and that the defendant had a right to be present with counsel, to be heard, to be confronted with and to cross-examine the witnesses against him, and to offer evidence of his own.

Petitioners suggest that had *Winship* already been decided at the time of *Specht*, the Court would have also required that the burden of proof as to the post-trial findings be beyond a reasonable doubt. But even if we accept petitioners' hypothesis, we do not think it avails them here. The Court in *Specht* observed that following trial the Colorado defendant was confronted with "a radically different situation" from the usual sentencing proceeding. The same simply is not true under the Pennsylvania statute. The finding of visible possession of a firearm of course "ups the ante" for a defendant, or it would not be challenged here; but it does so only in the way that we have previously mentioned, by raising the minimum sentence that may be imposed by the trial court.

Finally, we note that the specter raised by petitioners of States restructuring existing crimes in order to "evade" the commands of *Winship* just does not appear in this case.[5] As noted above, § 9712's enumerated felonies retain the same elements they had before the Mandatory Minimum Sentencing Act was passed. The Pennsylvania Legislature did not change the definition of any existing offense. It simply took one factor that has always been considered by sentencing courts to bear on punishment—the instrumentality used in committing a violent felony—and dictated the precise weight

---

[5] We reject the view that anything in the Due Process Clause bars States from making changes in their criminal law that have the effect of making it easier for the prosecution to obtain convictions. "From the vantage point of the Constitution, a change in law favorable to defendants is not necessarily good, nor is an innovation favorable to the prosecution necessarily bad." Jeffries & Stephan, Defenses, Presumptions, and Burden of Proof in the Criminal Law, 88 Yale L. J. 1325, 1361 (1979).

to be given that factor if the instrumentality is a firearm. Pennsylvania's decision to do so has not transformed against its will a sentencing factor into an "element" of some hypothetical "offense."

Petitioners seek support for their due process claim by observing that many legislatures have made possession of a weapon an element of various aggravated offenses.[6] But the fact that the States have formulated different statutory schemes to punish armed felons is merely a reflection of our federal system, which demands "[t]olerance for a spectrum of state procedures dealing with a common problem of law enforcement," *Spencer* v. *Texas*, 385 U. S. 554, 566 (1967). That Pennsylvania's particular approach has been adopted in few other States does not render Pennsylvania's choice unconstitutional.[7] See *Patterson*, 432 U. S., at 211; cf. *Spaziano* v. *Florida*, 468 U. S. 447, 464 (1984). Nor does the historical test advanced by the *Patterson* dissent, on which petitioners apparently also rely, materially advance their cause. While it is surely true that "[f]or hundreds of years some offenses have been considered more serious and the punishment made more severe if the offense was committed with a weapon or while armed," Brief for Petitioners 17, n. 11, petitioners do not contend that the particular factor made relevant here—visible possession of a firearm—has historically been treated "in the Anglo-American legal tradition" as requiring proof beyond a reasonable doubt, *Patterson*, 432 U. S., at 226 (POWELL, J., dissenting). See also *id.*, at 229,

---

[6] The Commonwealth argues that the statutes on which petitioners rely typically differ from that at issue here. In particular, most of the statutes are directed at all deadly weapons rather than just firearms, and most treat the armed crime as a higher grade of offense than the unarmed crime. Brief for Respondent 11.

[7] At least two States—New Jersey, see N. J. Stat. Ann. § 2C:43–6c (West 1982); *State* v. *Gantt*, 186 N. J. Super. 262, 452 A. 2d 477 (1982), aff'd, 195 N. J. Super. 144, 478 A. 2d 422 (App. Div. 1984), and Kansas, see Kan. Stat. Ann. § 21–4618 (1981); *State* v. *Mullins*, 223 Kan. 798, 577 P. 2d 51 (1978)—have statutory schemes similar to Pennsylvania's.

n. 14 (POWELL, J., dissenting) (approving new scheme under which State put burden on armed robbery defendant to prove that gun was unloaded or inoperative in order to receive lower sentence).

We have noted a number of differences between this case and *Winship, Mullaney,* and *Specht,* and we find these differences controlling here. Our inability to lay down any "bright line" test may leave the constitutionality of statutes more like those in *Mullaney* and *Specht* than is the Pennsylvania statute to depend on differences of degree, but the law is full of situations in which differences of degree produce different results. We have no doubt that Pennsylvania's Mandatory Minimum Sentencing Act falls on the permissible side of the constitutional line.

## III

Having concluded that States may treat "visible possession of a firearm" as a sentencing consideration rather than an element of a particular offense, we now turn to petitioners' subsidiary claim that due process nonetheless requires that visible possession be proved by at least clear and convincing evidence. Like the court below, we have little difficulty concluding that in this case the preponderance standard satisfies due process. Indeed, it would be extraordinary if the Due Process Clause as understood in *Patterson* plainly sanctioned Pennsylvania's scheme, while the same Clause explained in some other line of less clearly relevant cases imposed more stringent requirements. There is, after all, only one Due Process Clause in the Fourteenth Amendment. Furthermore, petitioners do not and could not claim that a sentencing court may never rely on a particular fact in passing sentence without finding that fact by "clear and convincing evidence." Sentencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all. See *Williams* v. *New York,* 337 U. S. 241 (1949). Pennsylvania has deemed a particular fact relevant and prescribed a

particular burden of proof. We see nothing in Pennsylvania's scheme that would warrant constitutionalizing burdens of proof at sentencing.[8]

Petitioners apparently concede that Pennsylvania's scheme would pass constitutional muster if only it did not remove the sentencing court's discretion, *i. e.*, if the legislature had simply directed the court to *consider* visible possession in passing sentence. Brief for Petitioners 31–32. We have some difficulty fathoming why the due process calculus would change simply because the legislature has seen fit to provide sentencing courts with additional guidance. Nor is there merit to the claim that a heightened burden of proof is required because visible possession is a fact "concerning the crime committed" rather than the background or character of the defendant. *Ibid.* Sentencing courts necessarily consider the circumstances of an offense in selecting the appropriate punishment, and we have consistently approved sentencing schemes that mandate consideration of facts related to the crime, *e. g., Proffitt* v. *Florida,* 428 U. S. 242 (1976), without suggesting that those facts must be proved beyond a reasonable doubt. The Courts of Appeals have uniformly rejected due process challenges to the preponderance standard under the federal "dangerous special offender" statute, 18

---

[8] *Addington* v. *Texas,* 441 U. S. 418 (1979), and *Santosky* v. *Kramer,* 455 U. S. 745 (1982), which respectively applied the "clear and convincing evidence" standard where the State sought involuntary commitment to a mental institution and involuntary termination of parental rights, are not to the contrary. Quite unlike the situation in those cases, criminal sentencing takes place only after a defendant has been adjudged guilty beyond a reasonable doubt. Once the reasonable-doubt standard has been applied to obtain a valid conviction, "the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him." *Meachum* v. *Fano,* 427 U. S. 215, 224 (1976). As noted in text, sentencing courts have always operated without constitutionally imposed burdens of proof; embracing petitioners' suggestion that we apply the clear-and-convincing standard here would significantly alter criminal sentencing, for we see no way to distinguish the visible possession finding at issue here from a host of other express or implied findings sentencing judges typically make on the way to passing sentence.

U. S. C. § 3575, which provides for an enhanced sentence if the court concludes that the defendant is both "dangerous" and a "special offender." See *United States* v. *Davis*, 710 F. 2d 104, 106 (CA3) (collecting cases), cert. denied, 464 U. S. 1001 (1983).

## IV

In light of the foregoing, petitioners' final claim—that the Act denies them their Sixth Amendment right to a trial by jury—merits little discussion. Petitioners again argue that the jury must determine all ultimate facts concerning the offense committed. Having concluded that Pennsylvania may properly treat visible possession as a sentencing consideration and not an element of any offense, we need only note that there is no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact. See *Spaziano* v. *Florida*, 468 U. S., at 459.

For the foregoing reasons, the judgment of the Supreme Court of Pennsylvania is affirmed.

*It is so ordered.*

JUSTICE MARSHALL, with whom JUSTICE BRENNAN and JUSTICE BLACKMUN join, dissenting.

I agree with much in JUSTICE STEVENS' dissent, *post*, at 96–98. Whether a particular fact is an element of a criminal offense that, under *In re Winship*, 397 U. S. 358 (1970), must be proved by the prosecution beyond a reasonable doubt is a question that must be decided by this Court and cannot be abdicated to the States. "[I]f *Winship* were limited to those facts that constitute a crime as defined by state law, a State could undermine many of the interests that decision sought to protect without effecting any substantive change in its law." *Mullaney* v. *Wilbur*, 421 U. S. 684, 698 (1975). The deference that the majority gives to the Pennsylvania Legislature's statement that the visible possession of a firearm should not be considered an element of the crime defined by 42 Pa. Cons. Stat. § 9712 (1982) is thus wholly inappropriate.

I would not, however, rely in this case on the formalistic distinction between aggravating and mitigating facts. The "continued functioning of the democratic process," *post*, at 100 (STEVENS, J., dissenting), might provide us with some assurance that States will not circumvent the guarantee of *Winship* by criminalizing seemingly innocuous conduct and then placing the burden on the defendant to establish an affirmative defense. But this Court nonetheless must remain ready to enforce that guarantee should the State, by placing upon the defendant the burden of proving certain mitigating facts, effectively lighten the constitutional burden of the prosecution with respect to the elements of the crime. See *Patterson* v. *New York*, 432 U. S. 197, 206–207 (1977) (allowing State to require defendant to prove extreme emotional disturbance by preponderance of the evidence but noting that this affirmative defense "does not serve to negative any facts of the crime which the State is to prove in order to convict of murder").

I would put off until next Term any discussion of how mitigating facts should be analyzed under *Winship*. This issue will be aired when the Court considers *Martin* v. *Ohio*, No. 85–6461, cert. granted, 475 U. S. 1119 (1986), in which a defendant challenges Ohio's requirement that the accused bear the burden of proving a claim of self-defense by a preponderance of the evidence. For now, it is enough to agree with JUSTICE STEVENS that "if a State provides that a specific component of a prohibited transaction shall give rise both to a special stigma and to a special punishment, that component must be treated as a 'fact necessary to constitute the crime' within the meaning of our holding in *In re Winship*," *post*, at 103. Pennsylvania has attached just such consequences to a finding that a defendant "visibly possessed a firearm" during the commission of any aggravated assault, and, under *Winship*, the prosecution should not be relieved of proving that fact beyond a reasonable doubt. I dissent.

JUSTICE STEVENS, dissenting.

Petitioner Dennison, a 73-year-old man, committed an aggravated assault upon a neighborhood youth whom he suspected of stealing money from his house. After a trial at which the Commonwealth proved the elements of the offense of aggravated assault beyond a reasonable doubt, the trial judge imposed a sentence of imprisonment of 11½ to 23 months. Because he had concluded that Pennsylvania's recently enacted Mandatory Minimum Sentencing Act, 42 Pa. Cons. Stat. § 9712 (1982), was unconstitutional, the trial judge refused to impose the 5-year minimum sentence mandated by that Act whenever the Commonwealth proves—by a preponderance of the evidence—that the defendant "visibly possessed a firearm during the commission of the offense," § 9712(b).

The judge presiding over Dennison's trial, as well as the judges in the other three petitioners' trials and the Superior Court Judges hearing the appeals, all concluded that visible possession of a firearm was an element of the offense. "'Visibly possessed a firearm' is inarguably language which refers to behavior which the legislature intended to prohibit." App. to Pet. for Cert. A35. As a consequence, the prohibited conduct had to be established by proof beyond a reasonable doubt. The Pennsylvania Supreme Court agreed that visible possession of a firearm is conduct that the Pennsylvania General Assembly intended to prohibit, *Commonwealth* v. *Wright*, 508 Pa. 25, 42, 494 A. 2d 354, 363 (1985) (Larsen, J., concurring); *id.*, at 49, 494 A. 2d, at 366 (concurring opinion joined by the majority opinion), and it recognized that evidence of such conduct would mandate a *minimum* sentence of imprisonment more than twice as severe as the *maximum* the trial judge would otherwise have imposed on petitioner Dennison, *id.*, at 29, n. 1, 494 A. 2d, at 356, n. 1. But it nonetheless held that visible possession of a firearm was not an element of the offense because the Pennsylvania

General Assembly had the foresight to declare in § 9712(b) that "Provisions of this section shall not be an element of the crime."

It is common ground that "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged." *Patterson* v. *New York*, 432 U. S. 197, 210 (1977). Today the Court holds that state legislatures may not only define the offense with which a criminal defendant is charged, but may also authoritatively determine that the conduct so described—*i. e.*, the prohibited activity which subjects the defendant to criminal sanctions—is *not* an element of the crime which the Due Process Clause requires to be proved by the prosecution beyond a reasonable doubt. In my view, a state legislature may not dispense with the requirement of proof beyond a reasonable doubt for conduct that it targets for severe criminal penalties. Because the Pennsylvania statute challenged in this case describes conduct that the Pennsylvania Legislature obviously intended to prohibit, and because it mandates lengthy incarceration for the same, I believe that the conduct so described is an element of the criminal offense to which the proof beyond a reasonable doubt requirement applies.

Once a State defines a criminal offense, the Due Process Clause requires it to prove any component of the prohibited transaction that gives rise to both a special stigma and a special punishment beyond a reasonable doubt. This much has been evident at least since *In re Winship*, 397 U. S. 358 (1970). In that case, the Court "explicitly" held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.*, at 364. In reasoning to this conclusion the Court reviewed the heritage of the rule that Justice Frankfurter characterized as "basic in our law and rightly one of the boasts of

a free society,"[1] and—of critical importance to the decision before us—explained the reasons that undergird the rule:

> "The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence—that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.' *Coffin* v. *United States*, [156 U. S. 432,] 453 [1895]. As the dissenters in the New York Court of Appeals observed, and we agree, 'a person accused of a crime . . . would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence as would suffice in a civil case.' 24 N. Y. 2d [196], 205, 247 N. E. 2d [253], 259 [1969].

> "The requirement of proof beyond a reasonable doubt has this vital role in our criminal procedure for cogent reasons. The accused during a criminal prosecution has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction. Accordingly, a society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt." *Id.*, at 363–364.

---

[1] *Leland* v. *Oregon*, 343 U. S. 790, 803 (1952) (Frankfurter, J., dissenting). Later in his opinion he noted that the "duty of the State of establishing every fact of the equation which adds up to a crime, and of establishing it to the satisfaction of a jury beyond a reasonable doubt is the decisive difference between criminal culpability and civil liability." *Id.*, at 805.

*In re Winship* thus took a purposive approach to the constitutional standard of proof: when the State threatens to stigmatize or incarcerate an individual for engaging in prohibited conduct, it may do so only if it proves the elements of the prohibited transaction beyond a reasonable doubt.[2]

It is true, as the Court points out, that "'[t]he applicability of the reasonable-doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case.'" See *ante*, at 85 (quoting *Patterson* v. *New York*, 432 U. S., at 211, n. 12). A State's freedom in this regard, however, has always been understood to reflect the uncontroversial proposition that a State has power, subject of course to constitutional limits, to attach criminal penalties to a wide variety of objectionable transactions; when it does so, the prosecution need establish beyond a reasonable doubt only the constituent elements of the specified criminal transaction. Nothing in *Patterson* or any of its predecessors authorizes a State to decide for itself which of the ingredients of the prohibited transaction are "elements" that it must prove beyond a reasonable doubt at trial.

Indeed, contrary to the supposition of the majority, *Patterson* v. *New York* is entirely in keeping with the limit on state definitional power implied in *Winship*. Patterson was charged with second-degree murder, a crime which in New York included two elements: "'intent to cause the death of another person'" and "'caus[ing] the death of such person or of a third person.'" 432 U. S., at 198 (quoting N. Y. Penal Law § 125.25 (McKinney 1975)). "Malice aforethought [was] not an element of the crime." 432 U. S., at 198. Because

---

[2] "The combination of stigma and loss of liberty involved in a conditional or absolute sentence of imprisonment sets that sanction apart from anything else the law imposes." Packer, *Mens Rea* and the Supreme Court, 1962 S. Ct. Rev. 107, 150. The requirement that conduct subjecting an individual to a special stigma and a special punishment be proved beyond a reasonable doubt therefore casts no doubt on the constitutionality of criminal restitution ordered on a lesser standard of proof.

"causing the death of another person with intent to do so," *id.*, at 205, was "an act which . . . the State may constitutionally criminalize and punish," *id.*, at 209; accord, *id.*, at 208, and because New York in fact proscribed and punished that conduct, *id.*, at 206, the Court upheld the State's refusal to "prove beyond a reasonable doubt every fact, the existence or nonexistence of which it [was] willing to recognize as an *exculpatory or mitigating circumstance* affecting the degree of culpability or the severity of the punishment," *id.*, at 207 (emphasis added)—in that case, the affirmative defense of extreme emotional disturbance. The Court explained that "the Due Process Clause did not invalidate every instance of burdening the defendant with proving *an exculpatory fact.*" *Id.*, at 203, n. 9 (emphasis added). "To recognize at all a *mitigating circumstance* does not require the State to prove its nonexistence in each case in which the fact is put in issue." *Id.*, at 209 (emphasis added). *Patterson* thus clarified that the Due Process Clause requires proof beyond a reasonable doubt of conduct which exposes a criminal defendent to greater stigma or punishment, but does not likewise constrain state reductions of criminal penalties—even if such reductions are conditioned on a prosecutor's failure to prove a fact by a preponderance of the evidence or on proof supplied by the criminal defendant.[3]

---

[3] The *Patterson* Court also recognized other "constitutional limits beyond which the States may not go in this regard," 432 U. S., at 210, citing *Tot* v. *United States*, 319 U. S. 463, 469 (1943), and other cases invalidating statutory presumptions. It was on the basis of these cases that *Patterson* distinguished the Maine statute struck down in *Mullaney* v. *Wilbur*, 421 U. S. 684 (1975). The Maine murder statute prescribed life imprisonment for "Whoever unlawfully kills a human being *with malice aforethought,*" Me. Rev. Stat. Ann., Tit. 17, § 2651 (1964) (emphasis added), and the trial judge had charged the jury that " 'malice aforethought is an essential and indispensable element of the crime of murder,' " 421 U. S., at 686 (quoting App. in No. 74–13, O. T. 1974, p. 40). Likewise, the Government conceded that the federal enactment in *Tot* proscribed only receipt of firearms in interstate commerce. See *Tot* v. *United States*, 319 U. S., at

The distinction between aggravating and mitigating facts has been criticized as formalistic. But its ability to identify genuine constitutional threats depends on nothing more than the continued functioning of the democratic process. To appreciate the difference between aggravating and mitigating circumstances, it is important to remember that although States may reach the same destination either by criminalizing conduct and allowing an affirmative defense, or by prohibiting lesser conduct and enhancing the penalty, legislation proceeding along these two paths is very different even if it might theoretically achieve the same result. Consider, for example, a statute making presence "in any private or public place" a "felony punishable by up to five years imprisonment" and yet allowing "an affirmative defense for the defendant to prove, to a preponderance of the evidence, that he was not robbing a bank." Dutile, The Burden of Proof in Crimi-

---

466. *Patterson* clarified that *Mullaney*, like *Tot*, stood for the proposition that "shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or *presumed* is impermissible under the Due Process Clause." 432 U. S., at 215 (emphasis added). Cf. *United States* v. *Romano*, 382 U. S. 136, 138, 144 (1965). Thus, although Maine could have punished all unlawful, intentional killings with life imprisonment, just as Congress in *Tot* could have punished possession of a firearm by one convicted of a crime of violence, in neither case did the legislature do so. This explanation, although not entirely satisfactory, see *State* v. *Lafferty*, 309 A. 2d 647, 664–665 (Me. 1973); *id.*, at 672–673 (Wernick, J., concurring), is consistent with the Maine Supreme Court's explanation on direct appeal that state law presumed malice. See *State* v. *Wilbur*, 278 A. 2d 139, 145–146 (Me. 1971). The state court downplayed this presumption because "no burden is imposed upon defendant until the State has first convinced the jury beyond a reasonable doubt that defendant is guilty of a voluntary and intentional homicide," at which point the issue "is no longer guilt or innocence of felonious homicide but rather the degree of the homicide." *Id.*, at 146. As we held in *Mullaney*, "[t]he safeguards of due process are not rendered unavailable simply because a determination may already have been reached that would stigmatize the defendant and that might lead to a significant impairment of personal liberty." 421 U. S., at 698. Accord, *Specht* v. *Patterson*, 386 U. S. 605, 608–611 (1967).

nal Cases: A Comment on the *Mullaney-Patterson* Doctrine, 55 Notre Dame Law. 380, 383 (1980). No democratically elected legislature would enact such a law, and if it did, a broad-based coalition of bankers and bank customers would soon see the legislation repealed.[4] Nor is there a serious danger that a State will soon define murder to be the "mere physical contact between the defendant and the victim leading to the victim's death, but then set up an affirmative defense leaving it to the defendant to prove that he acted without culpable *mens rea*." *Patterson* v. *New York*, 432 U. S., at 224, n. 8 (POWELL, J., dissenting). No legislator would be willing to expose himself to the severe opprobrium and punishment meted out to murderers for an accidental stumble on the subway. For similar reasons, it can safely be assumed that a State will not "define all assaults as a single offense and then require the defendant to disprove the elements of aggravation." *Mullaney* v. *Wilbur*, 421 U. S. 684, 699,

---

[4] Cf. Ashford & Risinger, Presumptions, Assumptions, and Due Process in Criminal Cases: A Theoretical Overview, 79 Yale L. J. 165, 178 (1969) ("In the first statute, a legislature has deemed three factors germane to punishment: (a) presence of the individual; (b) the presence of narcotics in the house; and (c) the defendant's knowledge. In the second statute, only two factors are deemed germane to whether an individual will be punished: (a) presence of the individual; (b) the presence of narcotics in the house. The electorate might approve of the passage of the first statute, but not the passage of the second. The fact that a legislature might pass the second statute does not mean that, given the political temperament of the state, the legislature would in fact have passed it. If the legislature nominally recognizes knowledge as germane (as it did in the first statute) and further, as the type of germane issue to be proved by the state, and then arranges its process so that most of those who lack knowledge are still sent to jail (as though the second statute had been passed), then those individuals are being punished for a crime which has never undergone the political checks guaranteed by representative government"); Note, The Constitutionality of Affirmative Defenses after *Patterson v. New York*, 78 Colum. L. Rev. 655, 667 (1978) ("[A]lthough a state legislature might have decided to define an offense without the mitigating or exculpatory factor, there is no reason to suppose it would have done so, or given the political climate of the state, could have done so").

n. 24 (1975). The very inconceivability of the hypothesized legislation—all of which has been sincerely offered to illustrate the dangers of permitting legislative mitigation of punishment in derogation of the requirement of proof beyond a reasonable doubt—is reason enough to feel secure that it will not command a majority of the electorate.[5]

It is not at all inconceivable, however, to fear that a State might subject those individuals convicted of engaging in antisocial conduct to further punishment for aggravating conduct not proved beyond a reasonable doubt. As this case demonstrates, a State may seek to enhance the deterrent effect of its law forbidding the use of firearms in the course of felonies by mandating a minimum sentence of imprisonment upon proof by a preponderance against those already convicted of specified crimes. But *In re Winship* and *Patterson* teach that a State may not advance the objectives of its criminal laws at the expense of the accurate factfinding owed to the criminally accused who suffer the risk of nonpersuasion.

It would demean the importance of the reasonable-doubt standard—indeed, it would demean the Constitution itself—if the substance of the standard could be avoided by nothing more than a legislative declaration that prohibited conduct is not an "element" of a crime. A legislative definition of an offense named "assault" could be broad enough to encompass every intentional infliction of harm by one person upon another, but surely the legislature could not provide that only that fact must be proved beyond a reasonable doubt and then specify a range of increased punishments if the prosecution could show by a preponderance of the evidence that the defendant robbed, raped, or killed his victim "during the commission of the offense."

---

[5] See J. Ely, Democracy and Distrust 183 (1980) ("constitutional law appropriately exists for those situations where representative government cannot be trusted, not those where we know it can"). See also *id.*, at 182–183.

Appropriate respect for the rule of *In re Winship* requires that there be some constitutional limits on the power of a State to define the elements of criminal offenses. The high standard of proof is required because of the immense importance of the individual interest in avoiding both the loss of liberty and the stigma that results from a criminal conviction. It follows, I submit, that if a State provides that a specific component of a prohibited transaction shall give rise both to a special stigma and to a special punishment, that component must be treated as a "fact necessary to constitute the crime" within the meaning of our holding in *In re Winship*.

Pennsylvania's Mandatory Minimum Sentencing Act reflects a legislative determination that a defendant who "visibly possessed a firearm" during the commission of an aggravated assault is more blameworthy than a defendant who did not. A judicial finding that the defendant used a firearm in an aggravated assault places a greater stigma on the defendant's name than a simple finding that he committed an aggravated assault. And not to be overlooked, such a finding with respect to petitioner Dennison automatically mandates a punishment that is more than twice as severe as the *maximum* punishment that the trial judge considered appropriate for his conduct.

It is true, as the Court points out, that the enhanced punishment is within the range that was authorized for any aggravated assault. That fact does not, however, minimize the significance of a finding of visible possession of a firearm whether attention is focused on the stigmatizing or punitive consequences of that finding. See *Mullaney* v. *Wilbur*, 421 U. S., at 697–698.[6] The finding identifies conduct that the legislature specifically intended to prohibit and to punish by a

---

[6] It is likewise irrelevant that petitioners had first been convicted of predicate felonies. "Under our system of criminal justice even a thief is entitled to complain that he has been unconstitutionally convicted and imprisoned as a burglar." *Jackson* v. *Virginia*, 443 U. S. 307, 323–324 (1979). See n. 3, *supra*.

special sanction. In my opinion the constitutional signifi-cance of the special sanction cannot be avoided by the cava-lier observation that it merely "ups the ante" for the defend-ant. See *ante*, at 88, 89. No matter how culpable petitioner Dennison may be, the difference between $11\frac{1}{2}$ months and 5 years of incarceration merits a more principled justification than the luck of the draw.

I respectfully dissent.