877 F.2d 61
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jerry RUSHING, Defendant-Appellant.
 No. 88-5673.
 United States Court of Appeals, Fourth Circuit.
 Submitted April 20, 1989.
Decided June 9, 1989.
 
 Thomas J. Ashcraft, United States Attorney, Max O. Cogburn, Jr., Assistant United States Attorney on brief for appellant.
 James H. Carson, Jr., James F. Wyatt, III, on brief for appellee.
 Before ERVIN, Chief Judge, and MURNAGHAN and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 When a person engaged in criminal conduct is called to account, it is not unusual for an attempt to be made to trivialize the seriousness of what has been done. That is the case here. Concerned about the condition of allegedly diseased hogs which had been in the possession of defendant Jerry Rushing, the pertinent authorities detailed a state employee of the Veterinary Division of the North Carolina Department of Agriculture, Albert Eatmon, to accompany Page Eppley, an agent of the United States Department of Agriculture, to visit and question Rushing. Earlier, the North Carolina Veterinarian had, by telephone, questioned Rushing concerning the shipment of diseased hogs to New York. The point came in the telephone conversation where Rushing refused to answer further questions on the subject and informed the North Carolina Veterinarian that all government agents were forbidden to come on his property, if they came to interview him concerning the subject.
 
 
 2
 Eatmon and Eppley, on making a visit to Rushing, identified themselves and, on asserted grounds that they were wearing only casual clothes and might have been planning to kidnap Rushing's eight-year-old granddaughter, were then subjected to a chilling experience. Rushing took down a rifle from the wall and, uttering profanity, pointed it at Eppley and Eatmon, in effect ordering them to stay while he poured out venomous comments. The rifle was, in fact, unloaded, but Eatmon and Eppley were not apprised of that not irrelevant fact. Eatmon was struck by Rushing. The order telling Eatmon and Eppley to sit down (and implicitly to remain sitting down) amounted to false imprisonment or kidnapping.
 
 
 3
 In the ensuing conversation, Rushing, who asserted that he could not read the identification tendered by Eatmon because he did not have his glasses on, blurted out: "I am with the mob and killed seven people and have never been tried yet. You want to come back with something else now." When Eppley stated that he did not have a gun, Rushing replied that Eppley did not have to be armed to get his head blown off. Eventually, after Rushing calmed down, the agents believed they could depart, and did so.
 
 
 4
 Rushing was indicted two days later for interfering with a federal employee in violation of 18 U.S.C. Sec. 111 (1984). The indictment further charged that the violation had involved the use of a deadly and dangerous weapon, which enhanced the possible term of imprisonment from three to ten years.[1]
 
 
 5
 At trial, the government was permitted to introduce testimony of state wildlife officials who had visited Rushing's home approximately two years before the incident. They were dressed in official state uniforms. They testified that Rushing issued instructions for someone to bring him a loaded gun and asserted that he had killed several men before and never had to spend a day in prison for it, going on to say: "Hell, I can have you taken out by a phone call to New York."
 
 
 6
 The jury, at the conclusion of the evidence, found Rushing guilty of interfering with Eppley, a federal employee, while he was performing official duties. The jury acquitted Rushing of using a deadly or dangerous weapon in the course of his interference with Eppley. The conviction amounted to a felony, prohibiting Rushing's possession or ownership of a rifle. 18 U.S.C. Sec. 922(g). The statutory maximum for a sentence following Rushing's conviction was imprisonment for three years and a fine of $5,000. Rushing has complained of the sentence imposed of twenty-one months of imprisonment, a $5,000 fine, and $50 assessment, in large part because of the resulting interference with his ability to conduct hunting expeditions on his property if he must go weaponless.
 
 
 7
 Rushing's argument comes down to a contention that all he has committed is a minor assault, since the use by him of a deadly or dangerous weapon was not found upon the submission of the case to the jury. The jury acquitted Rushing of using a deadly or dangerous weapon. Accordingly, Rushing argues he should have been sentenced in accordance with Federal Sentencing Guideline Sec. 2A2.3, "Minor Assaults," rather than Sec. 2A2.2, "Aggravated Assaults," which was employed by the district court.
 
 
 8
 However, the matter is not quite so simple to resolve. The elements of the crime of which Rushing was acquitted do not correspond precisely with the factors listed under the applicable guidelines section. The sentencing guidelines provided in Sec. 2A2.2 deal with an aggravated assault, including one involving the use of a deadly and dangerous weapon. Section 2A2.3 deals with a minor assault, which is defined as a misdemeanor assault or a felonious assault not covered by Sec. 2A2.2. For the former, the sentencing guideline comes to twenty-one to twenty-seven months and the sentence imposed was at the least onerous level, namely, twenty-one months. The minor assault under guideline Sec. 2A2.3 would work out to one month's imprisonment.
 
 
 9
 It is a consideration worthy of note that the jury did not by its acquittal establish that Rushing did not use a deadly and dangerous weapon. It only determined that there had not been proof beyond a reasonable doubt that he had used a deadly and dangerous weapon. That result may in large part have been attributable to a suspect instruction that the unloaded status of the weapon rendered it not dangerous, apparently regardless of whether Eppley and Eatmon were aware that such was the case. In all events, the proof beyond a reasonable doubt requirement does not extend to circumstances taken into account for sentencing purposes. McMillan v. Pennsylvania, 477 U.S. 79, 84 (1986).
 
 
 10
 The conduct of Rushing amply supports a conclusion that we are not here dealing with a minor assault. Even if the jury's finding is given the effect Rushing would like to ascribe to it, or if the Commentary to the sentencing guidelines is given effect that an intent merely to frighten is insufficient to constitute an assault as aggravated, acquittal or absence of one form of aggravated offense does not convert the assault for which Rushing has been convicted to a simple, minor one. The assault might still be one falling under the language of Sec. 2A2.2, despite 1) the acquittal for the greater offense, and 2) a conclusion that Rushing's intent was to frighten. There was here present more than an intent merely to frighten. Rushing's behavior, with or without a loaded gun, was calculated to restrain and terrorize the government agents, constituting the felony offense of kidnapping under North Carolina law. N.C.Gen.Stat. Sec. 14-39(a)(3). He is presently under indictment under state law for that very crime. Rushing thus qualifies under Guideline Sec. 2A2.2 because the assault involved "a dangerous weapon with ... an intent to commit another felony," in this instance kidnapping, and the district judge's sentence was, in the circumstances, correct. His holding of a federal agent at gunpoint, while threatening death, is aggravated, not minor, assault.
 
 
 11
 We are satisfied that other contentions made by Rushing concerning a supposed error in the court's instructions on the law of trespass and the admission of testimony of similar conduct[2] are legally insufficient to merit reversal of the conviction. The judgment is, consequently,
 
 
 12
 AFFIRMED.
 
 
 
 [1]
 Section 111 provides:
 Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in Section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000.00 or imprisoned not more than three years, or both.
 Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000.00 or imprisoned not more than ten years, or both.
 
 
 [2]
 Under Rule 403 of the Federal Rules of Evidence the court was justified in finding the evidence relevant and not to be excluded on grounds of prejudice or under Rule 404 kept out as character evidence