COLLOTON, Circuit Judge,
concurring.
I join the opinion of the court. I add these additional views in light of the concerns expressed by the separate opinion of my colleague that follows — namely, that the state of the law effectively “shifts the burden of proof’ under USSG § 2D1.1(b)(1) to the defendant in a manner that “should not be permitted under our system of justice,” post, at 886, and that on the facts of this case, “the tail wags the dog, to the detriment of the defendant.” Post, at 886.
The law of this circuit on § 2D1.1(b)(1) is clear that the burden to prove the adjustment rests with the government. In United States v. Peroceski 520 F.3d 886 (8th Cir.2008), we disagreed with the view of all other circuits to have considered the matter that the language of “clear improbability” in application note 3 to § 2D1.1 shifts the burden of proof to the defendant to disprove a connection between the weapon and the offense. Id. at 889. Instead, we held that “[t]he burden is always on the government to prove that a defendant is subject to a sentencing enhancement,” and that under § 2Dl.l(b)(l), the government must “show that it is not clearly improbable that the weapon was connected to the drug offense.” Id.
Even those circuits holding that the “clear improbability” standard shifts the burden of proof to the defendant uniformly have rejected claims that the scheme violates the Due Process Clause. These courts reason that because the guideline itself requires only proof that the weapon was possessed during commission of the offense to justify the enhancement, see § 2D1.1(b)(1), “[t]he [c]ommentary ... creates an exception to the terms of the [guideline, not a presumption that a connection existed” between the weapon and the offense. United States v. Restrepo, 884 F.2d 1294, 1296 (9th Cir.1989) (emphasis added). On this view, there is no constitutional flaw in the guideline, because “[t]he Due Process Clause does not require that the government prove the absence of every possible exception or mitigating circumstance.” Id. (citing McMillan v. Pennsylvania, 477 U.S. 79, 88, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); Patterson v. New York, 432 U.S. 197, 210-11, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)); accord United States v. Rhodes, 322 Fed.Appx. 336, 344 n. 3 (4th Cir.2009); United States v. Bjorkman, 270 F.3d 482, 493 (7th Cir.2001); United States v. Roberts, 980 F.2d 645, 648 n. 3 (10th Cir.1992); United States v. McGhee, 882 F.2d 1095, 1097-99 (6th Cir.1989). Most of these cases, moreover, rejected a constitutional chai *885 lenge to § 2Dl.l(b)(l) even when the guidelines were mandatory. Under the present advisory system, of course, a district court may incorporate its own policy views, including disagreement with the guidelines, in fashioning a sentence under 18 U.S.C. § 3553(a). See Kimbrough v. United States, 552 U.S. 85, 101-02, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007).
Most significant for present purposes, the record in this case does not support the suggestion that the guideline and commentary resulted in a tail-wags-dog scenario that victimized Aaron Anderson. The district court, perhaps due to a conflicting line of authority in this circuit that required the government to show a probable connection between weapon and offense, see Peroceski, 520 F.3d at 887, found by a “preponderance of the evidence” that “it was dearly probable that the gun was associated with [Anderson’s] drug trafficking.” S. Tr. 11, 13 (emphasis added). This finding was well supported by the evidence.
As the opinion of the court recounts, Anderson was a substantial crack cocaine dealer, operating from his residence in Davenport, Iowa. He placed a nine millimeter handgun, two loaded clips, and a box of ammunition — recognized tools of the drug trade — in a nearby storage unit for which he possessed the keys. He rented the storage unit (like his cell phone) in the name of his girlfriend, consistent with the practice of drug traffickers who hide assets in an effort to avoid detection. When questioned by police, after falsely denying responsibility for crack cocaine found in his kitchen, Anderson claimed that he was holding the gun in the Davenport storage unit for an incarcerated cousin from Chicago, at the request of the cousin’s sister. Anderson displayed a modus operandi of placing assets in strategic locations in Davenport to facilitate his criminal activity. At one point, he parked two vehicles at different locations to enable flight in case of an unexpected encounter with law enforcement.
Faced with this circumstantial evidence, the district court drew the reasonable inference that Anderson possessed the handgun in connection with his drug trafficking activity, finding it “obvious” that “there was no legitimate explanation for a gun.” The district court quite reasonably disbelieved Anderson’s story that he was merely holding the gun, with loaded clips and a box of ammunition, for a jailed relative who formerly lived 175 miles away. Anderson claimed no other legitimate purpose for the gun; this was not an unloaded hunting rifle found in the closet. Cf. USSG § 2D1.1, comment, (n.3). The more likely scenario is that Anderson possessed the firearm and ammunition in an accessible location for use in his drug business as necessary, but kept it in a remote storage unit rented in his girlfriend’s name so as to avoid responsibility for the gun if he was apprehended for drug trafficking. That the district court’s decision foiled that strategy is no injustice.