Justice ALITO, dissenting.
The Court overrules a well-entrenched precedent with barely a mention of stare decisis . See ante, at 2163, n. 6.
*133 Stare decisis is, of course, not an "inexorable command" in the field of constitutional law. Payne v. Tennessee, 501 U.S. 808, 828, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). Nevertheless, the Court ought to be consistent in its willingness to reconsider precedent. If Harris v. United States, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), and McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), can be cast aside simply because a majority of this Court now disagrees with them, that same approach may properly be followed in future cases. See Arizona v. Gant, 556 U.S. 332, 358-364, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) (ALITO, J., dissenting).
If the Court is of a mind to reconsider existing precedent, a prime candidate should be Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Although Apprendi purported to rely on the original understanding of the jury trial right, there are strong reasons to question the Court's analysis on that point. See, e.g., Bibas, *2173 Judicial Fact-Finding and Sentence Enhancements in a World of Guilty Pleas, 110 Yale L.J. 1097, 1123-1132 (2001) (critiquing the historical evidence relied upon by the Apprendi majority and concurrence, and concluding (1) that the "broad judicial discretion" characteristic of eighteenth-century common-law misdemeanor sentencing "undercuts the suggestion that sentencing was the sacred province of juries alone," (2) that even the "nineteenth-century tradition was not uniform, suggesting that the common law had no fixed rule on the subject," and (3) that "no eighteenth-century evidence link[ed] this [nineteenth-century] tradition back to the time of the Founding"); Little & Chen, The Lost History of Apprendi and the Blakely Petition for Rehearing, 17 Fed. Sentencing Rep. 69, 69-74 (2004) ("Blakely and Apprendi were undoubtedly founded on an erroneous historical understanding of the Framers' views in 1790 when they wrote the 6th Amendment's jury-trial guarantee. The fact that the Framers themselves wrote over a dozen indeterminate sentencing ranges in the first federal crime bill (see 1 Stat. 112-118 ...), has simply been overlooked by the Court"); Mitchell, *134 Apprendi 's Domain, 2006 Sup.Ct. Rev. 297, 298-299 (2006) (arguing, in the context of defending a broader conception of the jury right, that " Apprendi 's historical claim that sentencing enhancements were treated as 'elements' of offenses whenever they increased a defendant's maximum punishment is demonstrably mistaken" and that "the platitudes from Joel Prentiss Bishop's nineteenth-century treatises, which the pro- Apprendi Justices repeatedly invoke to support this assertion [that sentencing enhancements that increased a maximum punishment were treated as elements of the offense], are patently false and did not accurately describe the law in actual court decisions of that era" (footnotes omitted)).
The Court's decision creates a precedent about precedent that may have greater precedential effect than the dubious decisions on which it relies.*

The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

Speaking for herself, Justice GINSBURG, and Justice KAGAN-but not for the Court-Justice SOTOMAYOR argues that Harris ' stare decisis value is undermined by the subsequent reasoning of the Court's Apprendi line of cases and by the fact that no one rationale in Harris commanded five votes. I disagree.
In my view, Harris ' force is not vitiated by the Court's Apprendi line of cases, for two reasons. First, that line of cases is predicated on a purported Sixth Amendment requirement that juries find facts that increase maximum penalties, not mandatory minimums. Accordingly, as THE CHIEF JUSTICE's dissent persuasively explains, ante, at 2167 - 2171, Apprendi and its progeny have no impact on the distinct question resolved by Harris, which does not bear on the jury right. Second, the Apprendi line is now too intellectually incoherent to undermine any "contrary" precedents. If the rationale of Apprendi -which, as broadly construed by the Court in this case, is that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt," ante, at 2155 -were taken seriously, discretionary sentencing, as prescribed by 18 U.S.C. § 3553(a), should also be held to violate the Sixth Amendment. But a majority of the Court has not been willing to go where its reasoning leads.
Nor can it be correct to say that "Harris in no way strengthens the force of stare decisis in this case" because a " 'majority of the Court expressly disagreed with the rationale of [a] plurality.' " Ante, at 2165 - 2166 (SOTOMAYOR, J., concurring) (quoting Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 66, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) ). Decisions in which no one rationale commands a majority of the Court-including prominent decisions based on the views of a single Justice-are often thought to have precedential effect. See, e.g., United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) ; Regents of Univ. of Cal. v. Bakke, 438 U.S. 265, 269-272, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978) (opinion of Powell, J.). And, of course, if Harris is not entitled to stare decisis weight, then neither is the Court's opinion in this case. After all, only four Members of the Court think that the Court's holding is the correct reading of the Constitution. See ante, at 2164 - 2165 (BREYER, J., concurring in part and concurring in judgment).
As she concedes, ante, at 2165 - 2166, Justice SOTOMAYOR's concurrence is necessarily selective in its discussion of the factors that the Court has previously found to be relevant to the application of stare decisis . For example, she does not argue-presumably because there is no good argument to be made-that Harris and McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (which provide the framework under which criminal prosecutions have been carried out for at least the past 27 years) have proved " 'unworkable.' " Vieth v. Jubelirer, 541 U.S. 267, 306, 124 S.Ct. 1769, 158 L.Ed.2d 546 (2004) (plurality opinion) (quoting Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) ). Nor does she contend that "circumstances" outside the Court "have changed so radically as to undermine [Harris ' ] critical factual assumptions." Randall v. Sorrell, 548 U.S. 230, 244, 126 S.Ct. 2479, 165 L.Ed.2d 482 (2006) (plurality opinion). Indeed, no party or amicus has cited any such circumstances.
In short, other than the fact that there are currently five Justices willing to vote to overrule Harris, and not five Justices willing to overrule Apprendi, there is no compelling reason why the Court overrules the former rather than the latter. If the opportunity arises in the future to overrule Apprendi or the present case-both of which presumably involve "procedural rules ... that do not govern primary conduct and do not implicate the reliance interests of private parties," ante, at 2164 (SOTOMAYOR, J., concurring)-the precedent the Court sets today will be relevant to the issue of stare decisis .