PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
09/29/99
THOMAS  K. KAHN
CLERK

_____

No. 97-8424

_____

D. C. Docket No. 1:96-CR-367-MHS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES ALLEN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(September 29, 1999)**

Before COX, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Title 18, section 1791(a)(2) makes it unlawful for a federal inmate to possess a "prohibited object." Section 1791(d)(1) defines "prohibited object" to include, among other things, an object that is "intended to be used as a weapon." The issue in this case is whether the intent described in § 1791(d)(1)(B) is an element of the offense or merely a sentencing factor. The district judge determined pretrial that he would decide intent at sentencing. Because we find intent to be an element of the specific offense charged in the indictment here, we vacate the conviction and sentence, and remand.

## I. Facts

Charles Allen, an inmate at the United States Penitentiary in Atlanta, Georgia, worked as a quality assurance inspector at the on-site UNICOR[1] mattress factory. On the morning of August 12, 1996, Allen conversed for approximately twenty or thirty minutes with the foreman of the section where the mattress covers are sewn together. Another foreman observed this conversation, concluded that Allen was acting suspiciously, and asked the two men to go to the supervisor's office, where Allen was searched.

When asked to empty his pockets, Allen produced three nine-and-a-half-inch

_____

[1] UNICOR is a program through which inmates manufacture products pursuant to government contracts.

2

tufter needles and a wooden dowel with a hole bored into one end and a rope wrapped around the other end. The tufter needles, used to sew mattress covers together, appeared to have been broken off from one of the sewing machines. The needles fit into the wooden dowel, and when assembled, the items could be used as a shank or ice-pick tool or weapon with a lanyard. While Allen did not contest his possession of the items, he told the supervisor that he intended to give them to his supervisors privately rather than in view of other inmates.

## II. Procedural History

Allen was indicted in the Northern District of Georgia in a single-sentence indictment that alleges: "On or about August 12, 1996, the defendant, CHARLES ALLEN, an inmate in the Atlanta Federal Penitentiary, possessed prohibited objects, to wit: three needles approximately nine and one-half (9 ½) inches in length, which were intended to be used as weapons, in violation of Title 18, United States Code, Section 1791(a)(2)." (R.1 at 1.)

At a pretrial conference, the district judge ruled that the Government need not prove Allen's intent regarding the items in his possession as an element of the offense at trial; instead, the judge would determine the intent issue at sentencing. Allen's defense was the lack of intent, and because intent determined whether Allen committed a misdemeanor or felony, substantially affecting his sentence, he protested

3

the district judge's ruling. Allen did not, however, contest his possession of the needles or his status as a federal prisoner; therefore, he entered a conditional plea of guilty without a plea agreement, reserving the trial judge's determination of the intent issue for appeal.

At sentencing, Allen's counsel stated the evidence that the defense would have presented at trial concerning Allen's possession of the prohibited objects. The district judge, however, found that the forbidden objects were intended to be used as weapons. Allen was sentenced to thirty months' imprisonment to be served consecutively to the sentence that he was serving for bank robbery, a $100 special assessment, and three years' supervised release. This appeal followed.

### III. Issue on Appeal

Whether the fact that an object was "intended to be used as a weapon," as defined by 18 U.S.C. § 1791(d)(1)(B), is an element of the offense of possession of a prohibited object intended to be used as a weapon pursuant to 18 U.S.C. § 1791(a)(2) or is a sentencing factor.[2]

---

[2] In this case, the Government did not charge Allen with possessing prohibited objects "designed . . . as a weapon," as defined by 18 U.S.C. § 1791(d)(1)(B). Therefore, nothing herein should be construed as holding or implying that intent is an element of an offense charged in that manner in an indictment.

4

## IV. Standard of Review and Discussion

The interpretation of a statute is a question of law to be reviewed *de novo* by the appellate court. *See United States v. Grossman*, 131 F.3d 1449, 1451 (11th Cir. 1997). According to the Government, § 1791(a)[3] sets forth the offense of providing or possessing contraband in prison. Under this theory, a violation of § 1791(a)(2) is proven if the defendant (1) is a prison inmate who (2) possessed a "prohibited object."

---

[3]Relevant sections of 18 U.S.C. § 1791 (Providing or possessing contraband in prison) include:

(a) Offense.--Whoever--
  * * *
  (2) being an inmate of a prison, makes, possesses, or obtains, or attempts to make or obtain, a prohibited object;

 shall be punished as provided in subsection (b) of this section.

(b) Punishment.--The punishment for an offense under this section is a fine under this title or--
      * * *
  (3) imprisonment for not more than 5 years, or both, if the object is specified in subsection (d)(1)(B) of this section;
  * * *
  (5) imprisonment for not more than 6 months, or both, if the object is specified in subsection (d)(1)(F) of this section.
  * * *
(d) Definitions.--As used in this section--
  (1) the term "prohibited object" means--
      * * *
      (B) . . . a weapon (other than a firearm or destructive device), or an object that is designed or intended to be used as a weapon or to facilitate escape from a prison;
      * * *
      (F) any other object that threatens the order, discipline, or security of a prison, or the life, health, or safety of an individual.

5

The jury must simply find that the defendant possessed an object enumerated in § 1791(d)(1)(A)-(F) in order to find the defendant guilty. The type of prohibited object possessed by the defendant is to be determined by the court at sentencing by a preponderance of the evidence. The Government argues that its interpretation of the statute is supported by the natural language and structure of § 1791. In contrast, under Allen's interpretation of § 1791, the type of "prohibited object," defined by § 1791(d) and incorporated into § 1791(a)(2), is an element of the offense which the Government must prove beyond a reasonable doubt at trial.

We conclude that § 1791's language and structure support Allen's position. The Government contends that the fact that subsection (b) "Punishment" sets out different levels of punishment based on the type of "prohibited object" possessed by the defendant, as defined by subsection (d)(1), reflects congressional intent to make the type of prohibited object a sentencing consideration. Subsection (b), however, is not the only subsection which incorporates the definition of "prohibited object." The possession of a "prohibited object" is an element of the offense described in § 1791(a)(2). Subsection (d)(1) clarifies § 1791(a)(2) by defining the categories of prohibited objects. Subsection (d)(1)'s definition of "prohibited object" is, therefore, critical to an understanding of the offense set out by § 1791(a)(2). In other words, incorporation of the definition of the offense element of "prohibited object" is

6

necessary to determine the crime committed.

In addition to using the language and structure of § 1791, Allen supports his position with an analysis of several considerations used by the Supreme Court to distinguish elements of an offense from sentencing factors and an opinion from the Ninth Circuit, the only other circuit to address the intent component of § 1791. *See United States v. Rodriguez*, 45 F.3d 302 (9th Cir. 1995). Reversing a conviction under § 1791(a)(2) for possession of an object intended to be used as a weapon, the Ninth Circuit concluded that if:

> the object is not found to be a weapon as a matter of law or fact, conviction under the "designed or intended to be used as a weapon" language requires proof of specific intent on the part of the defendant in order to bring the object within the definition of (d)(1)(B).

*Id.* at 306. While the holding that the offense requires proof of "specific intent on the part of the defendant" goes beyond the question before us today, we consider the Ninth Circuit's opinion persuasive authority for the proposition that intent is an element of the offense charged in this indictment.

This conclusion is consistent with several factors considered by the Supreme Court to distinguish constitutionally permissible sentence enhancement considerations from elements of an underlying criminal offense. These factors include: (1) the amount of increase in the punishment resulting from the fact to be determined; *see McMillan v. Pennsylvania*, 477 U.S. 79, 87-88, 106 S. Ct. 2411, 2417 (1986); (2) the

7

difficulty of objectively verifying the additional fact; *id.* at 83-84, 106 S. Ct. at 2414-15; (3) the amount of prejudice to the defendant from the presentation of the additional fact to the jury; *Almendarez-Torrez v. United States*, ___ U.S. ___, 118 S. Ct. 1219 (1998); and (4) the alleged sentencing provision's lowering of the burden of proof required for a conviction. *McMillan*, 477 U.S. at 85, 88, 106 S. Ct. at 2415-16, 2417. We briefly consider each of these factors below.

First, we find the relative increase in punishment, as to both the characterization of the offense and the potential sentence, to weigh in favor of Allen's interpretation of the statute. With the decision at sentencing that the tufter needles possessed by Allen were intended to be used as weapons under § 1791(d)(1)(B), Allen's crime was elevated to a felony, and he was potentially subjected to imprisonment of up to five years.[4] *See* 18 U.S.C. § 1791(b)(3). To construe the type of prohibited object as a sentencing factor removes the possibility that a jury could convict a defendant of possessing a prohibited "object that threatens the order, discipline, or security of a prison, or the life, health, or safety of an individual" under § 1791(d)(1)(F), a misdemeanor offense subjecting the defendant to no more than six months of

---

[4] We note that Allen's presentence investigation report ("PSR") shows that the probation officer calculated Allen's base offense level at 13 because, "[a]ccording to the indictment, the contraband possessed was 'intended to be used as weapons.'" PSR at 2 (quoting R.1 at 1). Thus, the fact that determined whether Allen committed the crime charged in the indictment, his *intent* regarding the tufter needles, was the sole fact used by the probation officer to attribute to Allen a base offense level of 13, which clearly affected his sentence. *See* U.S.S.G. § 2P1.2(a)(2).

8

imprisonment. *See* 18 U.S.C. § 1791(b)(5).

Moreover, a defendant accused of a felony is entitled to certain procedural protections. "Any federal offense punishable by imprisonment for more than one year is an offense for which the Fifth Amendment requires a grand jury indictment." *United States v. Stone*, 139 F.3d 822, 836 (11th Cir. 1998) (per curiam) (citation omitted). Upon indictment, a defendant's right to have a jury of his peers determine whether he has committed a felony is a "principle of justice so rooted in the traditions and conscience of our people . . . as to be ranked as fundamental." *Id.* at 831(citing *McMillan*, 477 U.S. at 85, 106 S. Ct. at 2415). Because conviction of a felony results in the loss of constitutional rights important to each United States citizen, such as the rights to vote, to bear arms, and to engage in a profession, "[f]or a sentencing judge to effect such a deprivation by factual findings that convert what would otherwise be a misdemeanor into a felony seems . . . an impermissible usurpation of the historic role of the jury." *Id.* Such an impermissible deprivation is possible under the Government's interpretation of § 1791.

The second factor argued by Allen also weighs against the Government. This second factor asks whether the fact at issue is objectively verifiable; if so, it may be permissible to evaluate the fact at sentencing because the risk of error is slight. In *McMillan*, the Supreme Court found the fact that a defendant "visibly possessed a

9

firearm" in connection with certain crimes a valid ground for sentence enhancement. *See* 477 U.S. at 81 & 91, 106 S. Ct. at 2413 & 2419. The Supreme Court affirmed the state supreme court's determination that the sentence enhancement was constitutional, and noted the state supreme court's conclusion that "visible possession is a simple, straightforward issue susceptible of objective proof." *Id.* at 84, 106 S. Ct. 2415. In contrast, in the present case, whether the prohibited objects were intended to be used as weapons is not such a "simple, straightforward issue." The intent required by § 1791(d)(1)(B) is not an objectively verifiable additional fact, weighing against permitting a determination of intent at sentencing.

The third factor, requiring an evaluation of whether the presentation of the fact to the jury would prejudice the defendant, does not point toward permitting a determination of intent at sentencing. *See Almendarez-Torrez*, ___ U.S. at ___, 118 S. Ct. at 1226 (finding that Congress would not have wanted to create unfairness by the presentation of highly prejudicial, uncontested facts to the jury). Under this factor, if the presentation of the fact to the jury would be highly prejudicial, the fact would be more appropriately considered by the court at sentencing. In *Almendarez-Torrez*, the Supreme Court analyzed a statute that provided an enhanced sentence of up to twenty years' imprisonment for illegal reentry to the United States following deportation for conviction of an aggravated felony. *See id.* at ___, 118 S. Ct. at 1224.

10

In finding prior convictions a valid sentencing factor, the Court noted that "the introduction of evidence of a defendant's prior crimes risks significant prejudice." *Id.* at 1226. Such potential prejudice does not exist, however, where a jury is asked to determine the fact at issue. Whether the needles possessed by Allen were intended to be used as weapons was the factual issue to be determined in order to prove the offense, not a prejudicial fact simply admitted.

The fourth factor, a change in the standard of proof necessary for conviction, also weighs in Allen's favor. The district judge determined Allen's intent regarding the tufter needles at sentencing, where the proof standard is a preponderance of the evidence. *See United States v. Stone,* 139 F.3d 822, 834 n.12 (11th Cir. 1998) (citing *McMillan* for the proposition that "the presence or absence of a penalty sentencing factor is to be determined by the sentencing district judge, who need only find its existence by a preponderance of the evidence."). Therefore, the Government's interpretation of § 1791 — where "intended to be used as a weapon" was the charged offense — transforms the standard of proof as to the type of object possessed by Allen from beyond a reasonable doubt to be determined by the jury to a preponderance of the evidence to be determined by the judge at sentencing.

The Government attempts to counter Allen's arguments through analysis of the legislative history of § 1791. While we recognize the possibility that the legislative

11

history of § 1791 supports the Government's construction, the Supreme Court has cautioned against adopting an otherwise reasonable interpretation of a statute which raises serious constitutional questions. *See Jones v. United States*, ___ U.S. ___, ___, 119 S. Ct. 1215, 1222 (1999) (quoting *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408, 29 S. Ct. 527, 536 (1909), for the rule that "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter."). As we have explained, the Government's interpretation of the statute raises serious constitutional questions on which precedent is not dispositive. Indeed, Supreme Court decisions arguably suggest that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.*, ___ U.S. at ___, 119 S. Ct. at 1224 n.6. We therefore reject the Government's reading of § 1791 and interpret the intent requirement as an element of the offense of possession of a prohibited object intended to be used as a weapon.

## V. CONCLUSION

In accordance with the discussion above and given the specific charge in the indictment the Government brought against Allen, a jury must decide beyond a reasonable doubt whether the tufter needles were intended to be used as weapons. We

therefore VACATE Allen's conviction and sentence, and REMAND for proceedings consistent with this opinion with instructions to permit Allen to replead and to go to trial if he so elects.

VACATED AND REMANDED.