**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Rodney Allen DENT, Defendant–**
**Appellant.**

**No. 01–3547.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 26, 2002.

Decided June 14, 2002.

Before FAIRCHILD, COFFEY, and KANNE, Circuit Judges.

### ORDER

Federal inmate Rodney Dent was caught with a sharp plastic object con-

cealed in his rectal cavity. He was convicted by a jury for possessing a prohibited object, namely a weapon, within a prison, in violation of 18 U.S.C. § 1791(a)(2). On appeal he raises several arguments, which we will deal with separately. Rejecting them, we affirm.

On May 18, 1999, a black inmate at the federal penitentiary in Marion, Illinois was stabbed to death by two white inmates associated with two gangs of white inmates. Dent was one of several white inmates subjected to bodily examinations, and knives were found in their rectal cavities. Dent had secreted a sharp plastic object 3¾ inches long, wrapped in paper.

Inmates Tokash, Kolb, and Usher were indicted, tried, and convicted. Their convictions have been affirmed on appeal. *See United States v. Tokash,* 282 F.3d 962 (7th Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 2344, —— L.Ed.2d —— (2002) (No. 01–9970). That opinion contains a more complete statement of the background facts.

I. Challenges to Order Excluding the Defense of Necessity and to Denial of Subpoena Duces Tecum

As in *Tokash* the government filed a pretrial motion in limine to preclude Dent from introducing evidence to support a defense that he concealed the object out of necessity (i.e., to protect himself from other inmates). Although Dent did not respond, he did file motions for the issuance of subpoenas duces tecum seeking production by the warden of voluminous papers for the purpose of establishing the defense of necessity. The district court discussed the requirements of the defense and granted the government's motion and denied Dent's. At trial Dent made an offer of proof, outlining testimony not significantly different from the representations made by the *Tokash* defendants. Dent argues

on appeal that the motion in limine was erroneously granted and deprived him of his right to a jury trial of his affirmative defense; that the defense of necessity does not require a showing that a threat of harm is imminent; that he had made a showing that no legal alternatives were available; and that it was error to deny a subpoena duces tecum. *Tokash* is indistinguishable on these points, and fully disposes of Dent's arguments.

II. Denial of Instruction on Intent

At trial Dent requested that the jury be instructed that the government must prove that the object he possessed was prohibited in that it was designed or intended to be used as a weapon. He also sought an instruction that it must be proved he had a specific intent to use the object as a weapon. The court refused and instructed that while the government must prove that the object was a weapon, "the government is not required to prove that the defendant intended to use the object as a weapon." Dent argues on appeal that his requests were erroneously refused.

18 U.S.C. § 1791(a)(2) makes it an offense for a prison inmate to possess a prohibited object. "Prohibited object" is defined in § 1791(d)(1)(B) to include "a weapon (other than a firearm or destructive device), or an object that is designed or intended to be used as a weapon or to facilitate escape from a prison." Dent's indictment charged that he "did knowingly and intentionally possess a prohibited object, to wit: a weapon, commonly referred to as a knife and further described as being a piece of plastic sharpened to a point having an overall length of approximately 3 and 3/4 inches...." Thus he was charged under the first of the definitions of prohibited object just quoted, which says nothing about intended use, and not under the second, where intended use is an

element. Arguably his request for an instruction on intent could have been deemed a consent to amending the indictment to charge under the second definition. But the request was denied and the government bore the burden of proving that the object was a weapon.

Given the form of the indictment, Dent's argument essentially is that the evidence did not permit the jury to find that the plastic object was a weapon. He does argue that a "pointed piece of plastic is not characteristically dangerous and is only dangerous with regard to how it is intended to be used"; "a pointed piece of plastic 3 and 3/4 inches in length cannot be considered a weapon as a matter of law or every eating utensil or knifelike tool would be considered a weapon"; and "the type of object seized from him could never be considered a weapon. . . ."

■ We think, to the contrary, that the evidence at trial, viewed in the light most favorable to the verdict, supports the jury's finding that the plastic object was "a weapon." In addition to the jury's observation of its appearance, Randy Curtis Schaubert, a Marion correctional officer, testified that the object had been "shaven down to a point into a weapon," shaped like many other weapons he had recovered during his seventeen years at the prison. Schaubert added that this object looked like a "knife blade" and in his opinion could not be used for anything but as a weapon. Another witness, security operations specialist Captain David Benson, also testified that based on his twenty-one-year career with the Bureau of Prisons, an inmate would possess objects like Dent's "primarily because they can be used for assaults on other inmates [and] staff." Benson pointed out that Dent's object was "the blade portion of a weapon," and that a handle could be affixed to two grooves cut into the top of the object in order to make

it "a stabbing instrument." Asked on cross-examination to compare plastic weapons with those made out of steel, Benson maintained that plastic weapons were no less deadly and, in any event, constituted the "great majority" of weapons recovered at the prison. Marion's law enforcement coordinator Larry Kammerer also testified that he had "no doubt" that the object could "cut" or "puncture" another person, causing "serious injury," or even "kill someone with going through the eye." The foregoing evidence is at least corroborated by the location Dent chose for the concealment.

Dent cites three cases in support of his tendered instructions, but all are distinguishable. Significantly, in none of those cases was the defendant charged with possessing "a weapon" within the meaning of (d)(1)(B), as was Dent. In *United States v. Rodriguez*, 45 F.3d 302, 303 (9th Cir.1995), the defendant was charged with possessing a prohibited object (an instrument consisting of a 2–pronged metal handle made from an old knee brace). The district court consolidated all the alternative (d)(1)(B) definitions into a single verdict question and instructed the jury that it could convict if it found that the defendant possessed "a weapon or an object that is designed or intended to be used as a weapon"; the court also instructed that the government did not need to prove the defendant's intent to use the object as a weapon. *Id.* at 305. Setting aside the conviction, the Ninth Circuit held that the instruction failed to reflect the specific intent that was required for a conviction under the "designed or intended" language of (d)(1)(B). Of particular relevance for the present case, the court specified that where a defendant is charged with possessing a "weapon," the jury "may convict under the first alternative offered in (d)(1)(B), that is, when the object is a

'weapon,' without considering the defendant's intent in regard to the object ... [so long as] the jury finds as a matter of fact that it is a weapon." *Id.* at 306. The court's instruction here that Dent could be convicted if the object he possessed was "a weapon" did not run afoul of *Rodriguez.*

Dent also relies upon *United States v. Allen,* 190 F.3d 1208, 1209 (11th Cir.1999), in which the defendant was charged with possessing "prohibited objects, to wit: three needles approximately nine and one-half (9½) inches in length, which were intended to be used as weapons." Vacating the defendant's conviction, the Eleventh Circuit held that intent was an element of the specific offense charged in the indictment, and that a jury must decide whether the needles were intended to be used as weapons. Significantly, the court of appeals noted that the government is responsible for proving intent only when intent is an element of the specific charge in the indictment. *Id.* at 1210–11 & n. 2. The defendant in *Allen* was charged under a different clause of (d)(1)(B) than Dent, and therefore *Allen* in no way supports Dent's argument that his charged offense required a showing of intent.

Nor is Dent's position bolstered by this court's decision in *United States v. Gometz,* 879 F.2d 256, 258 (7th Cir.1989), in which the defendant was charged in part with "possession of an object that is designed or intended to be used as a dangerous weapon." We rejected the defendant's argument that his possession of a zip gun did not violate § 1791 because it was functionally inoperable. A weapon's functionality, we explained, is not a prerequisite to prosecution for possession of an object like a zip gun that is designed or intended to be used as a dangerous weapon. *Id.* at 259. That the defendant in *Gometz* was charged with and convicted under the "de-

signed or intended" language distinguishes the case from Dent's.

### III. Whether Dent Was Entitled to a Lesser Included Defense Instruction and Form of Verdict

§ 1791(a)(2) makes it an offense for an inmate to possess a "prohibited object." The punishment is found in § 1791(b) and the maximum varies according to the type of object specified in the definitions of prohibited object in § 1791(d)(1). The applicable definition here is "weapon (other than a firearm or destructive device)" in (d)(1)(B) and the maximum is five years. Another definition is "any other object that threatens the order, discipline, or security of a prison, or the life, health, or safety of an individual" in (d)(1)(F) and the maximum is six months. Dent argues that the (d)(1)(F) offense is a lesser included offense of (d)(1)(B), and the jury should have been given the opportunity to find him not guilty of (d)(1)(B) but guilty of (d)(1)(F).

We note initially that the type of prohibited object possessed is an element of the offense (which the government must prove beyond a reasonable doubt at trial), and not merely a factor to be determined by the court at sentencing (by a preponderance of the evidence). As the Tenth Circuit explained in *Allen,* § 1791(d)(1) clarifies § 1791(a)(2) by defining categories of prohibited objects, and these definitions are "incorpor[ated]" into the offense set out in § 1791(a)(2). *Allen,* 190 F.3d at 1210–11.

■ A defendant is entitled to an instruction on a lesser included offense if the elements of the lesser offense are a subset of the elements of the greater offense, and there is enough evidence to permit a rational jury to acquit the defendant of the greater offense and convict him of the lesser offense. Fed.R.Crim.P. 31(c); *Schmuck v. United States,* 489 U.S. 705,

716 n. 8, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989); *United States v. Hill,* 196 F.3d 806, 807 (7th Cir.1999). If the lesser offense requires an element not required for the greater offense, then no instruction is to be given under Federal Rule of Criminal Procedure 31(c). *Schmuck,* 489 U.S. at 716, 109 S.Ct. 1443; *United States v. Boyles,* 57 F.3d 535, 544 (7th Cir.1995). To prove the offense charged here, the government must prove that the object was a weapon. *See* § 1791(d)(1)(B). To prove the threatening object offense, the government would have to prove that the object was "other" than those described in (d)(1)(A)-(E), in addition to proving that it was threatening. *See* § 1791(d)(1)(F). Even though a weapon would normally be considered threatening, that fact does not bring it within (d)(1)(F). Congress intended that (d)(1)(F) would apply to objects not described in (d)(1)(A)-(E), but which could also be found threatening to the order, discipline, or security of a prison, or the life, health, or safety of an individual. The threatening object offense therefore is not included in the offense charged. And the district court correctly refused to give the requested instruction.

AFFIRMED