# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TIA MARIE-MITCHELL SKINNER,

        Defendant-Appellant.

FOR PUBLICATION
August 20, 2015

No. 317892
St. Clair Circuit Court
LC No. 10-002936-FC

Before: HOEKSTRA, P.J., and SAWYER and BORRELLO, JJ.

SAWYER, J. (*dissenting*).

I respectfully dissent.

While the majority sets forth a strong argument, it ultimately fails because it is based upon a false premise: that *Apprendi*[1] and its progeny requires that *all* facts relating to a sentence must be found by a jury. Rather, the principle set forth in those cases establishes only that the Sixth Amendment right to a jury trial requires the jury to find those facts necessary to impose a sentence greater than that authorized by the legislature in the statute itself based upon the conviction itself. And the statute adopted by the Michigan Legislature with respect to juvenile lifers does not fit within that category.

Looking first to *Apprendi* itself, the defendant was convicted under a New Jersey statute of possession of a firearm for an unlawful purpose and that statute authorized a sentence of between five and ten years in prison.[2] A separate statute, described as a "hate crime" statute, authorized an extended term of imprisonment, of between ten and twenty years, if the defendant committed the crime with a purpose to intimidate a person or group because of their membership

---

[1] *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000).

[2] *Id.* at 468.

-1-

in a specified protected class.[3]  The statute directed that that finding had to be made by the trial judge and the burden of proof was by a preponderance of the evidence.[4]

The *Apprendi* Court found this statutory scheme invalid, concluding as follows:  "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[5]  The majority in the case before us ignores this ultimate conclusion in *Apprendi*, that the facts that must be submitted to the jury are those that increase the prescribed maximum sentence.

But facts that the trial court considers in fixing a sentence that is within the maximum authorized by the statute (without additional facts found by the jury) need not be determined by the jury.  The *Apprendi* majority distinguished between fact-finding that authorizes a court to impose a greater sentence than the prescribed statutory maximum and a "sentencing factor."  It did so in the context of distinguishing *Apprendi* from the earlier decision in *McMillan v Pennsylvania*.[6]  *Apprendi*[7] explains the distinction as follows:

> It was in *McMillan v Pennsylvania*, 477 US 79; 106 S Ct 2411; 91 L Ed 2d 67 (1986), that this Court, for the first time, coined the term "sentencing factor" to refer to a fact that was not found by a jury but that could affect the sentence imposed by the judge.  That case involved a challenge to the State's Mandatory Minimum Sentencing Act, 42 Pa. Cons. Stat. § 9712 (1982).  According to its provisions, anyone convicted of certain felonies would be subject to a mandatory minimum penalty of five years imprisonment if the judge found, by a preponderance of the evidence, that the person "visibly possessed a firearm" in the course of committing one of the specified felonies.  477 US at 81-82.  Articulating for the first time, and then applying, a multifactor set of criteria for determining whether the *Winship* [*In re Winship*, 397 US 358; 90 S Ct 1444; 20 L Ed 2d 368 (1968)] protections applied to bar such a system, we concluded that the Pennsylvania statute did not run afoul of our previous admonitions against relieving the State of its burden of proving guilt, or tailoring the mere form of a criminal statute solely to avoid *Winship*'s strictures.  477 US at 86-88.

> We did not, however, there budge from the position that (1) constitutional limits exist to States' authority to define away facts necessary to constitute a criminal offense, 477 US at 85-88, and (2) that a state scheme that keeps from the jury facts that "expose [defendants] to greater or additional punishment," 477 US at 88, may raise serious constitutional concern. As we explained:

---

[3] *Id.* at 468-469.

[4] *Id.* at 468.

[5] *Id.* at 490.

[6] *McMillan v Pennsylvania*, 477 US 79; 106 S Ct 2411; 91 L Ed 2d 67 (1986).

[7] 530 US at 485-486.

"Section 9712 neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm. . . . The statute gives no impression of having been tailored to permit the visible possession finding to be a tail which wags the dog of the substantive offense. Petitioners' claim that visible possession under the Pennsylvania statute is 'really' an element of the offenses for which they are being punished—that Pennsylvania has in effect defined a new set of upgraded felonies—would have at least more superficial appeal if a finding of visible possession exposed them to greater or additional punishment, cf. 18 USC § 2113(d) (providing separate and greater punishment for bank robberies accomplished through 'use of a dangerous weapon or device'), but it does not." 477 US at 87-88.

As I will discuss later, the statutory scheme created by our Legislature creates these *McMillan*-like sentencing factors rather than requiring particular facts to be found in order for the trial court to have the authority to impose the greater sentence of life without parole.

The Supreme Court has consistently followed this distinction thereafter. In *Ring v Arizona*,[8] it rejected Arizona's death penalty statute because it placed upon the sentencing judge the responsibility of determining the existence of an aggravating factor necessary to impose the death penalty. Without such a judicial determination, the jury's verdict alone only authorized the imposition of life imprisonment.[9] After analyzing the effect of *Apprendi,* the *Ring* Court summarized the law as follows: "If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it— must be found by a jury beyond a reasonable doubt."[10]

Turning to *Blakely v Washington*,[11] the Court considered a sentencing scheme that authorized the trial court to upward depart from a standard sentence set by statute. The defendant was convicted of kidnapping. Although the Washington statute authorized a maximum sentence of up to 10 years, it further provided that the "standard range" for the defendant's offense was 49 to 53 months.[12] But the statute further authorized a judge to impose a sentence above the standard range if he found "substantial and compelling reasons justifying an exceptional sentence."[13] The sentencing court must make findings of fact and conclusions of law which justify the exceptional sentence and those findings are reviewable under a clearly

---

[8] 536 US 584; 122 S Ct 2428; 153 L Ed 2d 556 (2002).

[9] *Id.* at 597.

[10] *Id.* at 602.

[11] 542 US 296; 124 S Ct 2531; 159 L Ed 2d (2004).

[12] *Id.* at 299.

[13] *Id.*, quoting Was Rev Code Ann § 9.94A.120(2).

erroneous standard.[14]  In rejecting the Washington sentencing scheme, the Court noted "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*"[15]  Thus, a judge's sentencing authority is limited to "the maximum he may impose *without* any additional findings."[16]  The majority attempts to argue that *Blakely* controls this case because "the trial court in this case acquired authority to enhance defendant's sentence from a term-of-years to life without parole 'only upon finding some additional fact.'"[17]  But this attempt fails because MCL 769.25 does not, in fact, require the finding of an additional fact before it authorizes the imposition of a life-without-parole sentence.  Indeed, as *Blakely* points out,[18] the question is not whether the sentencing engages in judicial fact-finding, but on whether the defendant is entitled to a lesser sentence without those facts being found:

> Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion.  But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.  In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail.  In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10-year sentence—and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury.

Nothing in MCL 769.25 established a legal entitlement to defendant to be sentenced to a term of years rather than life in prison.  That is, a juvenile offender who commits first-degree murder, even after the adoption of MCL 769.25, knows that they are risking being sentenced to life in prison without the possibility of parole simply upon the jury's conviction for first-degree murder without the necessity of the jury finding any additional facts regarding the crime.

This then leads to the Court's decision in *Cunningham v California*.[19]  In *Cunningham*, the defendant was convicted of sexual abuse of a child under the age of 14.  Under California's determinate sentencing law, the crime was punishable by either a lower term of 6 years in prison, a middle term of 12 years in prison, or an upper term of 16 years in prison.[20]  But the statute

---

[14] *Id.* at 299-300.

[15] *Id.* at 303 (emphasis in original).

[16] *Id.* at 304 (emphasis in original).

[17] *Ante, slip op* at 18, quoting *Blakely*, 542 US at 305.

[18] 542 US at 309.

[19] 549 US 270; 127 S Ct 856; 166 L Ed 2d 856 (2006).

[20] *Id.* at 275.

required the imposition of the middle term unless the judge found, by a preponderance of the evidence, the existence of one or more aggravating factors. The judge so found and sentenced Cunningham to the upper term.[21] After a review of *Apprendi* and its progeny, the *Cunningham* Court again summarized the basic principle that comes out of those cases: "If the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied."[22]

This finally leads to the Supreme Court's decision in *Alleyne v United States*,[23] wherein the Court took up the *Apprendi* principle in the context of increases in a mandatory minimum sentence. Allen Alleyne was convicted under a federal robbery statute and a related statute which required minimum sentences for the possession or use of a firearm in certain crimes. That statute required a minimum sentence of 5 years, unless a firearm was brandished, in which case the mandatory minimum was 7 years, and was further raised to 10 years if the firearm was discharged.[24] The verdict form indicated that Alleyne had used or carried a firearm, which would authorize the mandatory five-year minimum sentence, but did not indicate whether the firearm was brandished, thus authorizing the seven-year mandatory minimum.[25] The trial court found that a preponderance of the evidence supported the finding that Alleyne had brandished the weapon and sentenced him to the mandatory minimum of seven years in prison.[26] While the *Alleyne* Court found that the fact of whether the defendant brandished a firearm must be found by the jury in order to increase the mandatory minimum sentence that he faced,[27] the Court also took pains to note that facts that merely influence judicial discretion in sentencing do not have to be found by a jury, stating as follows:[28]

> In holding that facts that increase mandatory minimum sentences must be submitted to the jury, we take care to note what our holding does not entail. Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment. See, *e.g., Dillon v United States,* 560 U.S. 817, ___, 130 S. Ct. 2683, 2692, 177 L. Ed.

---

[21] *Id.* at 275-276.

[22] *Id.* at 290.

[23] 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013).

[24] *Id.,* 133 S Ct at 2155; see 18 USC 924(c)(1)(A).

[25] *Alleyene,* 133 S Ct at 2156.

[26] *Id.*

[27] In doing so, the Court explicitly found that its earlier decision in *Harris v United States*, 536 US 545; 122 S Ct 2406; 153 L Ed 2d (2002), could not be reconciled with *Apprendi* and also questioned the continued validity of *McMillan* as it applied to mandatory minimum sentences. 133 S Ct at 2157-2158.

[28] *Id.* at 2163.

2d 271 (2010), ("[W]ithin established limits[,] . . . the exercise of [sentencing] discretion does not contravene the Sixth Amendment even if it is informed by judge-found facts" (emphasis deleted and internal quotation marks omitted)); *Apprendi*, 530 U.S., at 481, 120 S. Ct. 2348, 147 L. Ed. 2d 435 ("[N]othing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute"). This position has firm historical roots as well. As Bishop explained:

> "[W]ithin the limits of any discretion as to the punishment which the law may have allowed, the judge, when he pronounces sentence, may suffer his discretion to be influenced by matter shown in aggravation or mitigation, not covered by the allegations of the indictment." Bishop [Criminal Procedure (2d ed. 1872)] §85, at 54.

> "[E]stablishing what punishment is available by law and setting a specific punishment within the bounds that the law has prescribed are two different things." *Apprendi, supra,* at 519, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (Thomas, J., concurring). Our decision today is wholly consistent with the broad discretion of judges to select a sentence within the range authorized by law.

The Michigan Supreme Court recently considered the application of *Alleyene* to the Michigan sentencing guidelines in *People v Lockridge*.[29] While not directly applicable to this case, I do find its analysis relevant. Particularly, the Court makes the following observation in finding the legislative sentencing guidelines to be constitutionally deficient in light of *Alleyene*: "That deficiency is the extent to which the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e. the 'mandatory minimum' sentence under *Alleyne*."[30] Applying this same principle to the statute before us, the juvenile lifer law does require any particular judicial fact-finding to increase the potential sentence from a term of years to life without parole. Indeed, as the Court observed, the "inquiry is whether the pertinent facts that must be found are an element of the offense or a mere sentencing factor."[31]

I would submit that, regardless whether we look to *Apprendi* or *Alleyene*, or any of the other decisions of the Supreme Court, the principle to be applied is simple: does the statutory scheme enacted by the Legislature authorize the sentencing judge to impose a particular sentence without any additional fact-finding or, to impose the particular sentence, an additional fact, beyond that which supports the conviction itself, must be found. If it is the former, the sentencing judge is free to impose the sentence that his or her discretion concludes is appropriate.

---

[29] ___ Mich ___; ___ NW2d ___ (Docket No. 149073, decided July 29, 2015).

[30] *Lockridge, slip op* at 1-2 (emphasis in original).

[31] *Lockridge, slip op* at 6.

If the latter, then the defendant has the right to have that additional fact found by a jury beyond a reasonable doubt.

Turning to the statute at issue in this case, I believe that it fits within the former category—i.e., that no additional factfinding is necessary to justify a sentence of life without parole. MCL 769.25 deals with the sentencing of defendants who were under the age of 18 at the time that they committed a crime punishable by a sentence of life without parole and provides in pertinent part as follows:

> (3) If the prosecuting attorney intends to seek a sentence of imprisonment for life without the possibility of parole for a case described in subsection (1)(a), the prosecuting attorney shall file the motion within 21 days after the defendant is convicted of that violation. If the prosecuting attorney intends to seek a sentence of imprisonment for life without the possibility of parole for a case described under subsection (1)(b), the prosecuting attorney shall file the motion within 90 days after the effective date of the amendatory act that added this section. The motion shall specify the grounds on which the prosecuting attorney is requesting the court to impose a sentence of imprisonment for life without the possibility of parole.

> (4) If the prosecuting attorney does not file a motion under subsection (3) within the time periods provided for in that subsection, the court shall sentence the defendant to a term of years as provided in subsection (9).

> (5) If the prosecuting attorney files a motion under subsection (2) requesting that the individual be sentenced to imprisonment for life without parole eligibility, the individual shall file a response to the prosecution's motion within 14 days after receiving notice of the motion.

> (6) If the prosecuting attorney files a motion under subsection (2), the court shall conduct a hearing on the motion as part of the sentencing process. At the hearing, the trial court shall consider the factors listed in *Miller v Alabama*, 576 US_____; 183 L Ed 2d 407; 132 S Ct 2455 (2012), and may consider any other criteria relevant to its decision, including the individual's record while incarcerated.

> (7) At the hearing under subsection (6), the court shall specify on the record the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed. The court may consider evidence presented at trial together with any evidence presented at the sentencing hearing.

> * * *

> (9) If the court decides not to sentence the individual to imprisonment for life without parole eligibility, the court shall sentence the individual to a term of imprisonment for which the maximum term shall be not less than 60 years and the minimum term shall be not less than 25 years or more than 40 years.

The majority fundamentally misreads this statute. First, the majority looks to *People v Carp*,[32] and its reference to MCL 769.25 establishing a "default sentencing range" for defendants convicted of first-degree murder committed while a juvenile.[33] But the majority downplays the fact that this statement is made in the context of the fact that this "default sentencing range" is only applicable "absent a motion by the prosecutor seeking a sentence of life without parole" and that the trial court may impose a sentence of life without parole after such a motion is filed and conducting a hearing.[34] The majority then performs an act of legalistic legerdemain and reinterprets *Carp* as follows: "Stated differently, at the point of conviction, absent a motion by the prosecution and *without additional findings* on the *Miller*[35] factors, the maximum punishment that a trial court may impose upon a juvenile convicted of first-degree murder is a term-of-years prison sentence."[36] If this statement were true, then I would agree with the majority that the question of life-without-parole must be submitted to the jury. But the statement is simply untrue. There are no additional findings which must be made in order for a defendant to be subjected to a sentence of life without parole.[37]

MCL 769.25(6) does require that the trial court must conduct a hearing before it may impose a sentence of life without parole on a juvenile offender. And it further requires that the trial court "consider" the factors listed in *Miller*, as well as any other criteria the trial court deems relevant to its decision. MCL 769.25(7) then requires that "the court shall specify on the record the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed." But nowhere does the statute require the trial court to make any particular finding of fact before it is authorized to impose a sentence of life without parole. Rather, after conducting the hearing and considering the evidence presented at the hearing as well as the evidence presented at trial, the trial court makes its decision and must state on the record the reasons for that decision. As our Supreme Court noted in *Carp*, this process allows for the "individualized sentencing" procedures established by *Miller*.[38] This procedure also presumably allows for more meaningful appellate review of the sentence.

As for *Miller* itself, while MCL 769.25(6) directs the trial court to "consider the factors listed in Miller v Alabama," the opinion itself hardly establishes a list of factors which must be met before a sentence of life without parole may be imposed. Rather, the opinion speaks in

---

[32] 496 Mich 440; 852 NW2d 801 (2014).

[33] *Id.* at 458.

[34] *Id.*

[35] *Miller v Alabama*, 567 US ___; 132 S Ct 2455; 183 L Ed 2d 407 (2012).

[36] *Ante, slip op* at 14-15 (emphasis added).

[37] Arguably, the trial court must "find" that the prosecutor filed a motion within 21 days after conviction as required by MCL 769.25(3). But I doubt that this is the type of "fact" that the Supreme Court had in mind in determining a defendant's Sixth Amendment rights in *Apprendi* and its progeny.

[38] *Carp*, 496 Mich at 458-459.

-8-

general terms about why mandatory life without parole for a juvenile offender violates the Eighth Amendment and what must be considered before imposing a sentence of life without parole. For example, as to the former point, the Court[39] states a mandatory life without parole sentence for a juvenile

> precludes consideration of his chronological age and its hallmark features— among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him.

As for the latter point, the Court directs the sentencing court to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison."[40] But neither *Miller* nor the statute sets forth any particular facts that must be found before a sentence of life without parole may be imposed. Rather, both merely require the sentencing court to take into account the individual circumstances of the juvenile offender before determining whether a sentence of life without parole is appropriate in each particular case. But this hardly establishes an "element of the crime" that must be determined by a jury beyond a reasonable doubt.[41]

Moreover, I note that an underlying issue in this case—the trial court's failure to adopt any particular burden of proof because none is set forth in the statute—further supports the conclusion that the statute does not require any particular finding of fact. Rather, I would suggest that the Legislature did not include a burden of proof out of oversight or a desire to leave it to the courts to fashion one, but because it was unnecessary because the statute does not require anything to be proven. Rather, it only requires consideration of the relevant criteria to guide the trial court into determining the appropriate individualized sentence for the defendant before it.

The majority perpetuates its mistaken reading of the statute when it states that the "state conditioned defendant's life without parole sentence on two things: (1) the prosecution's filing of a motion to impose the sentence, and (2) the trial court's findings with respect to the *Miller* factors and 'any other criteria relevant to its decision.'"[42] While the first point is correct, the prosecution must file a motion, the second point, of course, is erroneous. The statute does not require findings, but only that the trial court "shall consider" the *Miller* "factors" and other relevant criteria. And "consider" does not mean to make findings, but, rather, "to think about

---

[39] *Miller*, 132 S Ct at 2468.

[40] *Miller*, 132 S Ct at 2469.

[41] *Apprendi*, 530 US at 477.

[42] *Ante, slip op* at 15, quoting MCL 769.25(6).

carefully" and "to think about in order to arrive at a judgment or decision" and "may suggest giving thought to in order to reach a suitable conclusion, opinion, or decision." Merriam-Webster's Collegiate Dictionary (11th ed), pp 265-266.

The majority rejects the argument in the Attorney General's amicus brief that no additional facts are needed to authorize a life without parole sentence as follows:[43]

> However, if as the state and the Attorney General contend, the "maximum allowable punishment" is life without parole at the point of defendant's conviction, then that sentence would offend the constitution. Under *Miller*, a mandatory *default sentence* for juveniles *cannot* be life imprisonment without the possibility of parole. Such a sentence would not be an individualized sentence taking into account the factors enumerated in *Miller*.

But, of course, the statute does not provide for a *mandatory* default sentence of life without parole. And it is the mandatory nature of the life-without-parole statutes that offended the Court in *Miller* resulting in a holding that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders."[44] And MCL 769.25 commits no such offense. The majority also latches onto a statement in a law review article by Professor Sarah Russell that "*Miller* concludes that life without parole is an inappropriate sentence for most juveniles, and may be given only in rare circumstances where certain facts are established. Thus, the factual finding of 'irreparable corruption' aggravates—not mitigates—the penalty."[45] But, with all due respect to Professor Russell and the majority, *Miller* hardly establishes "irreparable corruption" as an aggravating factor. Rather, *Miller* uses that term in a quotation from *Roper v Simmons*, 543 US 551, 573; 125 S Ct 1183; 161 L Ed 2d 1 (2005), which noted the difficulty in distinguishing between "transient immaturity" and "irreparable corruption."[46] It uses that point to support its statement that "[a]lthough we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison."[47] This hardly establishes "irreparable corruption" as an aggravating factor that must be found in order for the Eighth Amendment to allow the imposition of a life-without-parole sentence on a juvenile offender.

Finally, the majority conflates the observation made in *Carp*[48] that MCL 769.25 creates a "default sentence" of a term-of-years if the prosecutor fails to move for a sentence of life without

---

[43] *Ante, slip op* at 17.

[44] *Miller*, 132 S Ct at 2469.

[45] Russell, Jury Sentencing and Juveniles: Eighth Amendment Limits and Sixth Amendment Rights, 56 BC L Rev 553, 582 (2015); see *ante, slip op* at 18.

[46] *Roper*, 543 US at 573; see *Miller*, 132 S Ct at 2469.

[47] *Miller*, 132 S Ct at 2469.

[48] *Carp*, 496 Mich at 458.

parole with a requirement that there be additional findings in order to impose a life-without-parole sentence. Indeed, the majority describes the Attorney General's argument that a term-of-years sentence is not the "default sentence" as a "Herculean attempt at linguistic gymnastics."[49] But the only linguistic gymnastics here, Herculean or otherwise, are those of the majority. It attempts to create a "default sentence" under the statute when none exists once the prosecutor has moved for a life sentence. And the majority repeatedly states that the statute requires "additional findings" in order to authorize a sentence of life without parole when no such requirement is established under the statute.

In conclusion, there is no need to impanel a jury to make any additional factual findings to authorize the trial court to impose a sentence of life without parole. Under MCL 769.25, the only factual finding necessary to authorize the trial court to impose a sentence of life without parole was that defendant's involvement in the killing of her father constituted first-degree murder. The jury concluded that it did. Thus, *Apprendi* and the Sixth Amendment are satisfied and the trial court possessed the statutory authority to impose a sentence of life without parole, which it did. In fact, the trial court has done so three times: first, when it was mandatory, then a second time on remand after the decision in *Miller* and then a third time on remand after the decision in *Carp* and the passage of MCL 769.25. Perhaps the *Lockridge* majority says it best in observing that "unrestrained judicial discretion within a broad range is in; legislative constraints on that discretion that increase a sentence (whether minimum or maximum) beyond that authorized by the jury's verdict are out."[50] The majority attempts to find a legislative restraint on the trial judge's sentencing discretion where none exists.

For the reasons stated above, I would affirm.

/s/ David H. Sawyer

---

[49] *Ante, slip op* at 21.

[50] *Lockridge, slip op* at 12.